(17 Misc. Rep. 1.)

### PEOPLE ex rel. BASSETT v. WARDEN OF CITY PRISON.

(Supreme Court, Special Term, New York County.   April, 1896.)

INTOXICATING LIQUORS—RETROSPECTIVE EFFECT OF RAINES LAW.

    Laws 1896, c. 112 (Raines Law) § 31, forbids any person to give away any food to be eaten on premises where liquors are sold.  Section 45 provides that the act shall take effect immediately.  Section 4 provides that every valid license, in operation when the act takes effect, shall be valid for the term for which it was granted, and that "the rights and liabilities of the holder thereof during such term shall be governed by the laws in force immediately prior to the taking effect of this act."  *Held*, that such act prohibited the giving away of food on any premises where liquor was sold, though a valid license, granted under the existing law, was in operation when the Raines law took effect.

Habeas corpus by Benjamin Bassett against the warden of the city prison.   Dismissed.

Samuel Untermyer, for relator.

John F. McIntyre, for respondent.

BEEKMAN, J.   The relator seeks to be discharged on habeas corpus from imprisonment under a commitment made by a city magistrate for a violation of subdivision E of section 31 of chapter 112 of the Laws of 1896, commonly called the "Raines Law," on the ground that he gave away food to be eaten on certain premises where liquor was sold.   The relator has demurred to the return, and challenges the validity of the commitment on the ground that the section in question, at the time of the alleged offense, was not operative in respect to persons holding licenses under the old excise law, within which class it is admitted that the relator comes.   If, therefore, the construction of the law for which he contends is sound, it must follow that the commitment is void, and that he should be discharged from arrest.

The act in question was undoubtedly intended to be a complete embodiment of the policy of the state in respect to the regulation of the liquor traffic, and to express all of the conditions which the legislature considered necessary or desirable by way of limitation in order to safeguard the public interests.   The enactment rests for its validity upon the police power of the state, which the courts of this state have sustained in its relation to this traffic, to the extent, even, of absolute prohibition.   Wynehamer v. People, 13 N. Y. 378; Bertholf v. O'Reilly, 74 N. Y. 509–520.   Having the power to prohibit, the legislature may impose any conditions it sees fit upon its exercise, and is the sole judge of the reasonableness of any restriction which it may deem proper to impose.   Whether, therefore, the prohibition against the giving away of food where liquor is sold is reasonable or not does not come within the field of judicial inquiry.  The difficulty in determining whether this particular prohibition is operative in respect to the class of licensees to which the relator belongs grows out of what seem to be, upon their face, contradictory or inconsistent provisions of the statute.   Section 31 provides as follows:

"It shall not be lawful for any corporation, association, copartnership or person which, or who, has not paid a tax as provided in section 11 of this act, and obtained and posted the liquor-tax certificate, as provided in this act, to sell, offer or expose for sale, or give away liquors * * * in any quantity whatever, any part of which is to be drunk on the premises of such vendor or in any outbuilding, booth, yard or garden appertaining thereto or connected therewith. It shall not be lawful for any corporation, association, copartnership or person, whether having paid such tax or not, to sell, offer or expose for sale or give away any liquor: (A) On Sunday. * * * Or (E) to sell or expose for sale, or have on the premises where liquor is sold, any liquor which is adulterated with any deleterious drug, substance or liquid which is poisonous or injurious to health; or to give away any food to be eaten on such premises."

Taking this section by itself, the meaning is perfectly plain. The traffic in liquor is absolutely prohibited to all persons who have not paid the tax and obtained the certificate for which section 11 provides; and even then certain restrictions are imposed, limiting the business in respect to time, place, and manner, which are intended to be unconditioned in their operation. The prohibition is absolute in terms, and would have been sufficient without the assertion, "whether having paid such tax or not," a phrase which was evidently employed to give special emphasis to the expression of a purpose that under no circumstances should the giving away of food be associated with the sale of liquor in the same place. As section 45 provides that this act shall take effect immediately, there would, of course, be no difficulty in holding that this prohibition was immediately operative, and had been violated by the relator, were it not for certain other provisions of the statute, which will presently be referred to.

In enacting a law which was intended to put into operation an entirely new system, the legislature was confronted with the fact that an enormous traffic in liquor existed in the state, authorized by licenses granted by commissioners of excise under the authority of, and subject to restrictions and regulations contained in, existing statutes. The new system demanded the appointment and qualification of a large number of new officers, and the organization of their work, before the tax could be received and the certificate issued, which was essential to legalize the traffic. It was necessary, therefore, that the act should go into effect immediately, so far, at least, as the administrative portions of it were concerned. At the same time it was also evident that considerable time would have to elapse before the organization would be complete, and that, unless some temporary provision should be made for the continuance of the traffic, the whole business would be abruptly suspended, to the ruin of thousands engaged in it, and the inconvenience and privation of a large proportion of the people. Furthermore, justice demanded that a reasonable time should be afforded to those whose fortunes were embarked in the trade to prepare for the impending change in the conditions under which it could be conducted, and to take such steps as prudence might suggest to minimize inevitable loss. Under the influence, doubtless, of these considerations, the following provisions were inserted in the law:

By section 3 it is provided that from and after the 30th day of April, 1896, all boards of excise in the state are abolished, and that the rights, duties, and powers of all boards of excise, and of all commissioners of excise, and of the clerks and all other employés shall cease and terminate from that date; also, that no licenses to sell liquor should be granted, after the passage of the act, by any such board of excise, to extend beyond the 30th day of April, 1896, and that the fee for such license to so expire shall be in proportion to the fee for one year. Section 4 provides as follows:

"Every license heretofore lawfully granted by a board of excise which is valid when this act takes effect, shall be and remain valid for the term for which it was granted, except as herein provided, unless sooner canceled under the provisions of the law, under which it was granted, and the rights and liabilities of the holder thereof during such term shall be governed by the laws in force immediately prior to the taking effect of this act, except as otherwise expressly provided in this act, but such license shall cease, determine and be void from and after the 30th day of June, 1896; and the tax herein provided to be assessed shall not be levied or collected upon the business of any corporation, association. copartnership or person holding an unexpired license until the time lawfully fixed for the expiration of such license, or its termination as herein provided unless such license be sooner canceled."

In a subsequent section the powers and duties of boards of excise, in respect to the prosecution of violations of pre-existing laws, and the transfer, surrender, and revocation of licenses, are vested in the special deputy commissioners to be appointed under the act for the period intervening between the 30th day of April 1896, when such boards are abolished, and the 30th day of June 1896, when all licenses are terminated.

The prohibition, therefore, which the first paragraph of section 31 contains, forbidding any traffic in liquor without previous payment of the tax for which the statute provides, is necessarily subject to these special provisions, which, in continuing existing licenses, and authorizing new ones to be issued up to the 30th day of April, 1896, sanction the traffic under the old system until the license has terminated as provided in the act. Until that time arrives, the holder of a license transacts the business which it authorizes pursuant to the laws in force at the time of the passage of the act in question, and "his rights and liabilities" in respect thereto, are governed by such laws. While the words "rights and liabilities" seem to express, in a general way, all the privileges which the licensee enjoyed, and every penalty to which he was subject, under those laws, the important qualification is added, "except as otherwise expressly provided in this act."

It is here that the divergence of views logically commences in respect to the scope of the prohibitory regulations contained in section 31, which forbids, among other things, the giving away of food on premises where liquor is sold. It is claimed, on behalf of the relator, that no such restriction or prohibition existed in the former laws, that the holder of a license at the time the new law was passed enjoyed the right to do the act thus prohibited, and that, until his license is terminated, he is, therefore, authorized to continue to do

so by force of the guaranty above referred to. It is also claimed that the clause, "except as otherwise expressly provided by this act," refers to the change of jurisdiction from boards of excise to special deputy commissioners of excise, who, by section 9, are to exercise the powers and perform the duties of the former in respect to the transfer, surrender, or revocation of any license, and the prosecution of offenses for violations of law under any law existing immediately prior to the passage of the act. But this construction is altogether too narrow, and arbitrarily puts a limit upon the operation of an exception which, I think, was intended to cover all provisions of the statute which are inconsistent with or vary from pre-existing law, and which, under the system, are susceptible of immediate enforcement without disturbance of the general plan of the statute. In fact, in no other way can due effect be given to the mandate that the act shall take effect immediately. This view is strongly reinforced by section 44 of the act, which provides as follows:

"Sec. 44. Laws, Grants and Charters Repealed—Saving Clause. The provisions of any special or local law, grant or charter in conflict with this act are hereby repealed and annulled. Of the laws enumerated in the schedule hereto annexed, that portion specified in the last column is repealed, but the provisions of any such relating to the transfer, cancellation or revocation of a license, the collection of penalties or prosecutions for the violation of the law, shall continue in force as to any license which has not expired at the time this act takes effect, until the expiration thereof, subject to the provisions of this act in relation to the performance of the duties of boards of excise or excise commissioners by special deputies or special agents designated by the state commissioner of excise. The repeal of any law by this act shall not revive a law repealed thereby, but such repeal shall not impair any act done or right accruing, accrued or acquired, or liability, penalty, forfeiture or punishment incurred prior to the time this act takes effect, under or by virtue of any law so repealed, and the same may be asserted, enforced, prosecuted or inflicted as fully, and to the same extent, as if such law had not been repealed. All actions and proceedings, civil or criminal, commenced under or by virtue of a law so repealed, and pending immediately prior to the taking effect of this act, may be prosecuted and defended to final effect in the same manner as they might have been under the laws then existing, subject to the provisions of this act authorizing special deputy commissioners or special agents designated by the state commissioner of excise to perform the duties of boards of excise."

The schedule referred to in the section includes, and thus apparently repeals, the entire law under which the liquor traffic was conducted and regulated before the passage of the act, with the following exceptions: (1) The provisions relating to the transfer, cancellation, or revocation of a license; (2) the collection of penalties or prosecutions for the violation of the law, in respect to any license which had not expired, until the expiration thereof. Taken in connection with the provisions of sections 3 and 4 of the act, which recognize the continuance of such licenses after the passage of the act, and which declare that "the rights and liabilities" of the holders of such licenses, during such term, "shall be governed by the laws in force immediately prior to the taking effect of this act, except as otherwise expressly provided in this act," it must be confessed that the saving clause of the repealing section is unfortunately nar-

row, and most inartificially expressed. It is, however, in this condition, a very strong indication of an intention that the sanction given by section 4 to the continued traffic, under licenses issued under the old law, is not to be extended beyond what the necessities of the case may reasonably require.

Under the former law the license expressed the class of traffic which the licensee was permitted to carry on, and, while prohibitory regulations, in many respects similar to those which are embraced in section 31 of the present act, are there found, they are appropriately stated as regulations of an already licensed traffic. The rights, then, which are reserved to existing licensees under the present law are those which are conferred in and by the license, to be exercised according to the license, and also the quasi property attributes with which the statute has to some extent invested the license itself in respect to its transfer, while the liabilities under the old law which are continued are those which are immediately associated with misconduct in respect to that which has thus been reserved, or which has not been obviously replaced, by some express provision of the latter law. The saving of rights under the license does not necessarily include freedom from any other prohibitory regulations than those which are contained in the former law. Such regulations were not expressed in the grant of the privilege, or as a part of the license, but are distinct statutory regulations affecting the manner in which the privilege already conferred shall be used. If it be claimed that this construction is narrow or close, the answer seems to be that such a construction is necessary, and therefore legitimate, in order to give due weight to every portion of the act, and proper effect to the general intent of the legislature which the law as a whole appears to disclose.

In this view of the matter it may fairly be held that what the legislature has seen fit in this act to declare shall not be done by those employed in the liquor traffic was intended to, and therefore does, extend to all who are thus engaged, under whatever form of authority. The prohibitions contained in section 31 with which we have been dealing are also supposed to be founded upon considerations of the public welfare, and, unless an intention to the contrary is obvious, should be held to apply to every case coming within the terms of the definition. In addition to this, a construction of a law should always be avoided, if possible, which, all other things being equal, makes it lawful for one, but unlawful for another, to do precisely the same thing. If the construction asked for by the counsel for the relator should be adopted, this singular and certainly most undesirable condition would exist, that between the 1st day of May and the 1st day of July, 1896, during which liquor dealers in this city will be lawfully engaged in the business, some under the old licenses and others under the new liquor-tax certificates, it would be lawful for the former to sell between 12 and 1 o'clock on Monday morning, to maintain shades and screens before their windows, and to give away food, while it would be unlawful and criminal for the latter to do the same things. It is not reasonable to suppose that

the legislature intended to sanction a condition so grotesque as this, or so mischievous in the contempt for the law which it would naturally inspire. While it was the purpose of the act to protect those who were engaged in the traffic at the time it was passed, it certainly was not intended to give them any such exclusive privileges.

I am thus led to the conclusion that the provisions of section 31 are now in force, and that the relator was properly committed by the magistrate before whom he was arraigned. The lack of precision of statement, and of proper co-ordination of the different provisions of the statute with each other, renders the task of construing it a difficult one, and the margin for differences of opinion as to its meaning is, therefore, a wide one. I think, however, that the interpretation which I have given it is more consonant with the spirit of the law and its general intent, and should, therefore, be adopted. The writ is dismissed, and the prisoner remanded.

Writ dismissed, and prisoner remanded.