BORDEN'S FARM PRODUCTS OF NEW JERSEY, INC., NEWARK MILK AND CREAM CO., LOTZ BROS. DAIRY, INC., AND IDEAL FARMS, INC., PLAINTIFFS, v. LOCAL UNION NO. 680, INTERNATIONAL BROTHERHOOD OF TEAMSTERS, &c., ET ALS., DEFENDANTS.

Superior Court of New Jersey
Chancery Division

Decided April 13, 1951.

*Mr. Edward J. Gilhooly* for the plaintiffs (*Messrs. Gilhooly, Yauch & Fagan,* attorneys).

*Mr. Thomas L. Parsonnet* for the defendants (*Messrs. Parsonnet, Weitzman & Oransky,* attorneys).

FREUND, J. S. C.  The defendants have moved to dissolve the restraints contained in an order to show cause obtained

*ex parte* and without notice. The restraints are based upon a finding that "unlawful acts have been threatened to be committed"; not upon the commission of any unlawful act.

It is alleged that at a conference held on January 18, 1951, Lawrence McGinley, president of the defendant local union, threatened that a picket line would be placed at the plaintiffs' premises. McGinley specifically denies that he "made any threat or statement or intimation of any sort that there would be a picket line either at the creamery or at the city plants," and avers that preceding the conference he and his associates "specifically agreed that we would make no threat whatever of any kind of action, whether strike or picketing, and I know that each and every one of the union representatives observed this understanding and made no threat whatever that a picket line would be placed anywhere." Both the plaintiffs' allegations of threat to picket and defendants' denial thereof are corroborated by affidavits of persons attending the conference at which allegedly the threat was made.

The four plaintiffs sell and distribute milk and other dairy products at wholesale and retail. They employ inside workers who process and bottle or package the products, and outside workers who transport and deliver them. Plaintiffs and defendant, Local Union No. 680, have contracts covering these workers, and there is no labor dispute between them over any of the terms or conditions of employment. The contracts prohibit strikes or walkouts and provide for arbitration of "any and all disputes and controversies arising under or in connection with the terms or provisions hereof, or in respect to anything not herein expressly provided, but germane to the subject matter of this agreement, which the representatives of the union and the employer have been unable to adjust" before arbitrators selected as the contract stipulates. This provision was recently construed in *Newark Milk & Cream Co. v. Local 680*, 12 *N. J. Super*. 36 (*App. Div*. 1951).

The complaint alleges that the union and its officers are engaged in efforts to organize the employees of four creameries which supply the plaintiffs with milk; that these cream-

eries are separate and distinct entities from the plaintiffs; that the local union has not been certified by the National Labor Relations Board as the bargaining agent for these employees of the creameries, and, therefore, they decline to recognize it as such agent until an election is held at each plant, or the matter submitted to mediation before the Federal or State Mediation Boards, which the union declines to do. On the other hand, the union claims in affidavits filed in its behalf, that it represents approximately 3,500 employees in the milk and ice cream industry in Northern New Jersey, among them are employees of the creameries whom it has recently commenced to organize; that it is endeavoring to negotiate uniform contracts with all employers in the industry. They allege that the plaintiff, Borden's Farm Products of New Jersey, Inc., owns the creamery, Sussex Milk & Cream Co., Inc.; that the plaintiff, Newark Milk and Cream Co., owns and operates the creamery, Deposit Farms, Inc.; that its president is the general manager of Newark Milk and Cream Co.; that Benchester Creamery Co., Inc., is part of the plaintiff, Lotz Bros. Dairy, Inc., and that Raymond C. Lotz is the president of Benchester and the owner of Lotz Bros. Dairy, Inc.; that the plaintiff, Ideal Farms, Inc., and Ideal Farm Products, Inc., the creamery, are in effect one and the same entity, and that Jacob Tanis is president of both corporations. The defendants aver that employees of the creameries have made application to become members of Local Union No. 680 and have authorized it to engage in collective bargaining negotiations on their behalf. The affidavits of both parties establish that conferences have been held and negotiations carried on between them, but that a satisfactory agreement has not been reached. It is clear, however, that no unlawful acts have been committed by the defendants.

The restraints contained in the order are sweeping in scope and read as follows:

"(a) From in an manner whatsoever picketing, patrolling, collecting or gathering, or attempting to do the same at, on, or in the vicinity of or near any of the places or premises at which Plaintiff, Borden's Farm Products of New Jersey, Inc., operates or does

business in New Jersey, namely, 249 Orange Street, Newark, New Jersey; 806 Third Avenue, Asbury Park, New Jersey; 163 State Street, Hackensack, New Jersey; 641 Montgomery Street, Jersey City, New Jersey; 55 Nesbitt Street, Newark, New Jersey; 225 Madison Avenue, Plainfield, New Jersey; or where Newark Milk and Cream Co., trading as Alderney Dairy Co., operates or does business in New Jersey, or where Lotz Bros. Dairy, Inc. operates or does business, namely 280 Piaget Avenue, Clifton, New Jersey, or where Ideal Farms Inc. operates or does business, namely, 960 Belmont Avenue, North Haledon, New Jersey, and

(b) From interfering, either directly or indirectly, with the performance of the labor contracts between said Local Union No. 680 and the respective Plaintiffs; and

(c) From interfering, either directly or indirectly, with the employment relationship between the respective Plaintiffs and their employees; and

(d) From, directly or indirectly preventing, hindering, or obstructing or attempting to prevent, hinder, or obstruct any person, firm or corporation from doing business with the respective Plaintiffs, or directly or indirectly preventing the delivery, shipment, or receipt of any merchandise or materials from or to the respective places of business of the Plaintiffs hereinbefore set forth; and

(e) From ordering, commanding, directing, assisting, aiding or abetting in any manner whatsoever, any person, or persons, committing or attempting to commit any of the aforesaid acts; and

(f) From directly or indirectly preventing, hindering or obstructing, or attempting to prevent, hinder or obstruct any member of Local Union No. 680, or any other person, firm or corporation, from making deliveries to the respective plants of the plaintiffs at the locations hereinbefore set forth, and which deliveries may be received from Sussex Milk & Cream Company, Inc., Deposit Farms, Inc., Benchester Creamery Co., Inc. and Ideal Farms Dairy Products, Inc., or any of them; and

(g) From encouraging or inducing, or attempting to encourage or induce the employees of the Plaintiffs, or any of them, to leave or cease their employment or to engage in any strike or other concerted refusal to work; and

(h) If Lawrence McGinley, John H. Webster, William Williamson, or Richard Keber, or any of the last named, have, prior to the service of the within order, ordered or directed to be done any of the foregoing matters contained in sub-paragraphs (a) to (g) then, which ever one or ones of the last named persons who has done so, countermand forthwith any such orders or directions. * * *"

Many points are argued on this motion to vacate the restraints. However, it will suffice to hold that their imposition was contrary to general equity procedure and to specific statutory procedure, *R. S.* 2:29–77 *et seq.*

An interlocutory injunction should not issue where the material facts on which the plaintiffs rely are met by full and explicit denial under oath. Here, the plaintiffs' allegations of threat are specifically denied. *Citizens' Coach Co. v. Camden Horse Railway Co.,* 29 *N. J. Eq.* 299 (*E. & A.* 1878).

*R. S.* 2:29–77.1 *et seq.,* which is procedural in its provisions, was recently considered in *Outdoor Sports Corp. v. A. F. of L., Local* 23132, 6 *N. J.* 217 (1951) ; *Isolantite, Inc. v. United Elec., &c.,* 132 *N. J. Eq.* 613 (*E. & A.* 1942). The statute expressly prohibits the issuance of an injunction except upon a finding of the commission of unlawful acts. In this case, there is no such finding.

The plaintiffs contend that the restraints were properly granted although based merely upon a threat to picket, because there is no labor dispute between the parties, and, hence, that the statute does not apply. I am not in accord with this view. *R. S.* 2:29–77.8 defines a "labor dispute" as follows: "When used in this act, and for the purpose of this act: * * * (c) the term 'labor dispute' includes any controversy concerning terms or conditions of employment, or concerning the association or representation of persons in negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of employment, or concerning employment relations, or any other controversy arising out of the respective interests of employer and employee, regardless of whether or not the disputants stand in the proximate relation[ship] of employer and employee." Within the context of this definition, there is here a labor dispute. The union claims the membership of employees of the creameries and has endeavored to represent them in negotiating a contract with respect to the terms and conditions of their employment. Although the facts in this case are distinguishable from those in the *Outdoor Sports* case, *supra,* the law is pertinent. Justice Oliphant said:

"We can agree that a primary relationship of employer and employee is not required to make the benefits of the act available to the disputants and that under certain facts and conditions, it is

available to disputants who are employees of independent contractors or customers or persons associated with or connected to the primary disputants because of a unity of interests in the terms and conditions of employment. We likewise agree it is not necessary that all the disputants must stand in the proximate relationship of employer and employee one to the other, provided they are engaged in the 'industry, trade, craft, or occupation in which such dispute occurs.' *R. S.* 2:29–77.8(b)."

If the creameries are separate and distinct entities from the plaintiffs, as they claim, the labor dispute is between the defendants and the creameries, which certainly are in the same industry as the plaintiffs, *Newark Milk & Cream Co. v. Milk Drivers, &c.,* 19 *N. J. Misc.* 468 (*Ch.* 1941). If they are not separate entities, as the defendants claim, the labor dispute is between the parties hereto, *Consolidated Realty Co. v. Dyers, &c., Federation,* 137 *N. J. Eq.* 413 (*Ch.* 1946). In the latter case, Vice-Chancellor Fielder found

"The facts are that complainant and Palisade Company are private corporations owned and controlled by the same three stockholders and they have the same officers. * * * It appears that three individuals make use of corporate forms merely as instrumentalities for their convenience in conducting two business enterprises and that those individuals have a common interest in all that affects either corporation. For the purpose of this proceeding the court will look through forms to the realities and will disregard corporate identities in order that the claimed rights of the defendants may receive equitable consideration, and I conclude that complainant is involved in the same labor dispute as Palisade Company, as a labor dispute is defined by *R. S.* 2:29–77.8."

The defendants contend that the restraints ought not to have been imposed because the plaintiffs have failed to comply with *R. S.* 2:29–77.4, which provides that "No restraining order or injunctive relief shall be granted to any complainant * * * who has failed to make every reasonable effort to settle such dispute either by negotiation or with the aid of any available governmental machinery of mediation or voluntary arbitration." Without passing upon the merit of defendant's contention, the question of arbitration may be considered. Singularly, both parties assert that they

are willing to submit the matter to mediation or arbitration. Settlement of controversies by arbitration is favored by the courts. *Machine Printers Beneficial Association v. Merrill Textile Print Works,* 12 *N. J. Super.* 26 (*App. Div.* 1951); *Newark Milk & Cream Co. v. Local 680,* 12 *N. J. Super.* 36 (*App. Div.* 1951). If the creameries are in fact merely corporate instrumentalities of the plaintiffs, as the defendants contend, then it may be that the dispute is arbitrable under the broad arbitration provision of the contracts between the parties. The plaintiffs, however, deny the unity of the milk companies and the creameries, but aver that, nevertheless, they are willing to arbitrate. Accordingly, since both parties desire arbitration or mediation of the dispute, they should have it, even though not required by contract.

The *ad interim* restraints should be vacated and the order discharged.