61 N.J. Super. 369 (1960)
160 A.2d 855
COMMERCIAL CAN CORP., A NEW JERSEY CORPORATION, PLAINTIFF-RESPONDENT,
v.
LOCAL 810, STEEL METAL, ALLOYS AND HARDWARE FABRICATORS AND WAREHOUSEMEN, INTERNATIONAL BROTHERHOOD OF TEAMSTERS, ET AL., DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued March 21, 1960.
Decided May 12, 1960.
*371 Before Judges CONFORD, FREUND and HANEMAN.
Mr. Thomas L. Parsonnet argued the cause for defendants-appellants (Messrs. Parsonnet, Weitzman and Oransky, attorneys).
Mr. Charles E. Villanueva argued the cause for plaintiff-respondent (Messrs. Van Riper and Belmont, attorneys).
The opinion of the court was delivered by CONFORD, J.A.D.
Defendants are a labor union and certain of its officers and agents. Plaintiff corporation is a manufacturer whose plant is situated in Newark. Together with Fein's Tin Can Co. Inc. and Atlas Can Co., both of New York City, plaintiff is a wholly owned subsidiary of U.S. Hoffman Machinery Corp. The union is the collective bargaining agent of the employees of all three concerns, which are under common management and supervision.
At the time of institution of this action, December 7, 1959, there was in effect a collective bargaining agreement between plaintiff and the union which was due to expire January 31, 1960. A separate agreement covering the New York plants had expired some time previously and a strike was instituted by their employees against the New York companies because of the failure of negotiation of a new *372 labor contract. Thereupon a number of the New York employees were assigned to the Newark plant. Defendants say this was done to assist the New York plants by handling some of the production the New York concerns were unable to effect because of their strike. No finding as to this was made by the trial court. Testimony relevant to this matter by plaintiff's general manager was equivocal. Regarding this procedure as bringing the plaintiff to the aid of the New York enterprises in their economic struggle with the union, the latter sent representatives from New York to picket the Newark factory notwithstanding that in its labor contract with plaintiff, still in effect, it agreed there would be no strikes, work stoppages, picketing or secondary boycotts, etc. and that the union would be liable in law and equity for a breach of such provisions.
In its verified complaint, seeking both an injunction and damages, plaintiff recited, inter alia, that defendants were attempting to prevent plaintiff's employees from working and advising them not to work. It sought an injunction against the "aforesaid interference with business, work stoppage * * * picketing * * * and all other activities of the defendants."
On December 7, 1959 a judge of the Chancery Division issued a temporary restraint against defendants on the basis of ex parte affidavits; heard the parties on an order to show cause the following day; and on December 11 entered a restraining order "until further order of Court" enjoining them from "picketing, boycotting, striking, displaying any signs regarding plaintiff, or in any way interfering with the operation of the business of plaintiff and prohibiting defendants from contacting, soliciting, or in any manner dealing with any business customers of plaintiff, and enjoining and restraining defendants from coming within one mile of plaintiff's plant * * *." The court found that "the defendant union is engaged in picketing the plaintiff in support of its current strike against" the New York companies but "that there is at present no labor dispute *373 shown by the record between plaintiff and defendants." The issuance of the injunction was not preceded or attended by any of the procedural requisites or findings specified by the Anti-Injunction Act (N.J.S. 2A:15-51 to 58) or by the filing of the bond for costs required by section 53. The restraining order recites that the cited statutory provisions "do not apply" because the record does not "establish that [a] labor dispute exists between the plaintiff and the defendants."
Defendants petitioned the United States District Court for the District of New Jersey for removal of the cause on December 16, 1959. This was denied, insofar as the cause of action for an injunction was concerned, on the ground that there could be no removal thereof to the federal court since the federal court lacked initial jurisdiction and the state court lacked any jurisdiction over that feature of the controversy, the subject matter being "federally pre-empted" by the provisions of the Labor Management Relations Act, 1947 (Taft-Hartley), 29 U.S.C. Sec. 141 et seq., because of the implication of an unfair labor practice in the controversy under the fact-findings by the state court.
This court subsequently granted leave to appeal from the restraining order. Several contempt orders against various of the individual defendants have been issued in the interim.
Defendants urge two main grounds of appeal from the injunction: (1) the state courts have been excluded from jurisdiction over the unfair labor practices contended to inhere in this controversy (29 U.S.C. Sec. 158(b) (4) (A)) by virtue of section 10 of the Taft-Hartley Act, 29 U.S.C. Sec. 160, as construed in a series of controlling federal decisions culminating in San Diego Bldg. Trades Council, etc. v. Garmon, 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959); (2) the case involved or arose from a labor dispute within the scope of the New Jersey Anti-Injunction Act, and the injunction was illegal because concededly not obtained in conformity with the mandatory procedural requirements of that statute. See United States Pipe, etc., *374 Co. v. United Steelworkers of America, 59 N.J. Super. 240 (App. Div. 1960). Defendants also object to the unreasonableness of the scope of the restraints.
The first of these questions is one of uncommon complexity and difficulty as applied to the precise problem here presented  an employer's right to a state court injunction against a union's breach of a collective bargaining agreement where such conduct may also be reasonably contended to constitute an unfair labor practice under the Taft-Hartley Act. Cf. McCarroll v. Los Angeles County D.C. of C., 49 Cal.2d 45, 315 P.2d 322 (Sup. Ct. 1957). Neither our own courts nor the United States Supreme Court have yet passed upon the specific issue. We have decided to avoid resolution of the question as we are fully satisfied that the restraint was improper in any event as in contravention of the requirements of the New Jersey Anti-Injunction Act cited above.
Plaintiff urges that the issue is now moot as the labor contract between the parties has expired, plaintiff's employees have gone on strike, and the restraint is presumably vacatable as of course since there is no subsisting contract between the parties. Defendants counter that the invalidity of the restraint when issued will affect pending contempt proceedings and bear upon the union's right to allowance of a counsel fee under N.J.S. 2A:15-53. Without implying any view as to the merits of these assertions we think a determination of this appeal is shown to be at least debatably germane to such prospective questions. Moreover, the question as to the scope of the Anti-Injunction Act in this context is one of considerable general concern. We shall therefore proceed to determine the appeal.
Plaintiff, as noted, takes the position that no "labor dispute" was involved here within the meaning of the Anti-Injunction Act and that its procedural requirements are therefore not applicable. Its reasoning is summarized in its brief as follows:
*375 "In its complaint plaintiff alleged that it had been advised of no dispute by the aforesaid Local 810, or by any of its members, or by any of plaintiff's employees. The record is void of any labor dispute between plaintiff corporation and defendant Local 810. There was no dispute between them regarding the rates of pay, conditions of employment, or any other matters related thereto. The picketing, which was not done for the purpose of obtaining any relief from the plaintiff, could properly be characterized as `blackmail picketing' in that there was no demand for any relief against the plaintiff corporation. * * *"
But it does not follow that because the union was not yet complaining concerning existing rates of pay or conditions of employment at Newark it was therefore not in a dispute with plaintiff or that the latter was not apprised of its nature. From defendants' contentions below and here, the proofs before the trial judge of shifts of substantial numbers of employees from New York to Newark, and the absence of pertinent fact-findings as to this matter, we must for present purposes accept as true defendants' assertion that the union was disaffected by plaintiff's economic cooperation with its associated enterprises in New York which naturally had the effect of giving aid and comfort to the New York companies in their full-blown economic struggle with the union there. For present purposes we are not, of course, concerned with the lawfulness under either state or federal law of the objective of defendants' picketing, since, if the "case" is one "involving or growing out of a labor dispute," as defined in the Anti-Injunction Act, the procedural provisions of the act must be complied with whether or not the activity of the union is substantively illegal and properly enjoinable on the merits of the controversy. N.J.S. 2A:15-53, 58; Independent Dairy Workers, etc., v. Milk Drivers, etc., Local No. 680, 30 N.J. 173, 185 (1959); United States Pipe, etc., Co. v. United Steelworkers of America, supra (59 N.J. Super., at pages 267, 270). This point is at the very heart of the underlying public policy of the statute which is to be "sympathetically construed to attain the intended procedural safeguards," Independent *376 Dairy Workers, etc., v. Milk Drivers, etc., Local No. 680, ubi cit. supra.
Plaintiff urges that the only true labor dispute in this fact-complex is that between the New York companies and the union. But the circumstances indicate otherwise.
In the first place, by the time this action was instituted, plaintiff and defendants were in a dispute peculiarly of their own, this precipitated by the fact that defendants were allegedly persuading plaintiff's employees to stop working for it. Under N.J.S. 2A:15-58c., one of the situations encompassed within the very comprehensive definition of "labor dispute" therein is "any other controversy arising out of the respective interests of employer and employee," such situation, like all others covered by the definition, being expressly exempted from any requisite that "the disputants stand in the proximate relation of employer and employee." As to participants, it suffices that the case involve persons or an organization of employers or employees who are engaged in the same "industry, trade, craft, employment, or occupation," having "conflicting or competing interests" in the dispute, and "participating or interested" therein. This controversy did involve the interests of defendants as employees, or an organization of employees (although not of plaintiff), in weakening an economic ally of their struck New York employers, see N.L.R.B. v. Business Mach. & Office A., etc., 228 F.2d 553, 558 (2 Cir. 1955), certiorari denied 351 U.S. 962, 76 S.Ct. 1025, 100 L.Ed. 1483 (1956), and also the interests of plaintiff as an employer in that its employees were being persuaded to stop work.
Secondly, there is considerable respectable authority to the effect that if the picketed place of business is identifiable as involving essentially the same proprietorship as that wherein the primary labor dispute originated, regardless of the corporate forms of organization, the dispute may be regarded as extending to the former. Newark Ladder, etc., v. Furniture Workers, etc., 125 N.J. Eq. 99 (Ch. 1939); *377 Consolidated Realty Co. v. Dyers, etc., Federation, 137 N.J. Eq. 413 (Ch. 1946); and see Borden's Farm, etc., of N.J. v. Local Union No. 680, etc., Teamsters, 13 N.J. Super. 271, 277 (Ch. Div. 1951); Annotation, 37 A.L.R.2d 687 (1954). There is no doubt here that plaintiff and the New York concerns were commonly owned and operated; they are also in the same business. The common union accentuates the close-knit tie between all the enterprises from a labor-management relationship standpoint.
Thirdly, even regarding the labor dispute between the union and the New York companies as a different dispute, strictly speaking, from the controversy between the parties hereto, there is a fairly arguable basis for contending that since the controversy in the instant case grew directly out of the New York labor dispute the case remains within the scope of the Anti-Injunction Act as growing out of a "labor dispute," even though the parties to the "case" are not identical with the parties to the "labor dispute." In Borden's Farm, etc., of N.J. v. Local Union No. 680, Teamsters, etc., supra, the plaintiff corporation sought an injunction against organizational picketing by the union, not of its own plants, but of those of creameries which supplied plaintiff with milk. Plaintiff and the union were already operating under a labor contract as to which there was no current dispute between them. The court regarded the situation as one encompassing a labor dispute within the act even if the creameries and the plaintiff were separate entities (the union contended they were in common ownership), the existence of a labor dispute between the union and an employer in the same industry as the plaintiff being regarded as sufficient to implicate the operation of the act (13 N.J. Super., at page 277). (It was implicit in that viewpoint, of course, that there also had to be competing or conflicting interests between the parties involving or growing out of the labor dispute.) We need not, however, determine whether so broad a construction of the act is authoritative, being *378 satisfied that a labor dispute existed between the parties to this cause for the reasons already given.
Illustrative of the statutory principle that the disputants need not stand in the proximate relationship of employer and employee in order for the Anti-Injunction Act to apply are Outdoor Sports Corp. v. A.F. of L., Local 23132, 6 N.J. 217, 226 (1951); Holly Stores, etc., Inc. v. District 76, etc., of America, 14 N.J. Super. 447 (Ch. 1951); Borden's Farm, supra, 13 N.J. Super., at pages 276-277; and see Kingston Trap Rock Co. v. International, etc., Local 825, 129 N.J. Eq. 570 (E. & A. 1941). Emphasizing that the statute applies not only to a case "involving" a labor dispute but as well to one "growing out of" a labor dispute is Independent Dairy Workers, etc., v. Milk Drivers, etc., Local No. 680, supra (30 N.J., at page 185).
It will be of interest, parenthetically, to note that there is no unfair labor practice, within the Taft-Hartley Act, where, as defendants contend is here the case, one concern carries on the business activity of another affected by a strike and the union therefore pickets the former. N.L.R.B. v. Business Mach. & Office A., etc., supra; Douds v. Metropolitan Federation of Architects, Engineers, Chemists and Technicians, Local 231, 75 F. Supp. 672, 676 (D.C.S.D.N.Y. 1948), and see, generally, Note, 13 Rutgers L. Rev. 702, 709-710 (1959). But it bears repetition that the circumstance of existence of a Taft-Hartley unfair labor practice does not control the determination as to the involvement of a "labor dispute" within an anti-injunction statute. See the discussion hereinabove.
We consequently conclude, on principle, that there is here shown, prima facie, such a labor dispute as implicates the operation of the Anti-Injunction Act. But this position is challenged by plaintiff on the separate ground that the union, which ordered the picketing, was contractually obligated to it to refrain from causing or inducing any work-stoppage or engaging in any work-stoppage tactics on its premises while the contract was in effect. It contends that the relief *379 it was seeking was thus not in any proper sense an injunction in a labor dispute but only the specific enforcement of a valid contract. We are thereby put to the inquiry as to whether or not a controversy otherwise classifiable as a labor dispute, and entitling a defendant union to the procedural protections of the Anti-Injunction Act when its conduct is sought to be enjoined, loses that classification because steps taken by the union in support of its economic interests in the controversy are contrary to its undertaking in a valid and subsisting collective bargaining agreement. There is no New Jersey case giving consideration to this question, although in Borden's Farm, supra, a labor dispute was found notwithstanding the fact that the threatened strike sought to be enjoined would have constituted the breach of a "no-strike" clause in a collective bargaining agreement. The dispositive issue in that case centered around the employee-employer relationship of the disputants, and apparently the argument made here that conduct in breach of the collective bargaining agreement takes the controversy out of the labor dispute category for purposes of the applicability of the Anti-Injunction Act was neither urged nor considered.
The question has, however, received substantial consideration both by the federal courts and several of our sister states. In the federal courts it arises in the context of the extent of remedial relief available in suits brought under section 301 of the Taft-Hartley Act, 29 U.S.C. Sec. 185, which gives the district courts jurisdiction over actions for breach of collective bargaining agreements. The federal courts are almost unanimous in holding that the jurisdictional grant of section 301 is limited by the Norris-La Guardia Act, 29 U.S.C. Secs. 101-115, precluding the issuance of an injunction in violation thereof. Since the Norris-La Guardia Act, section 104, as judicially construed, prohibits injunctions against peaceful picketing in a labor dispute regardless of the purpose of the picketing, relief against unions under section 301 of the Taft-Hartley Act *380 is confined to actions for damages. See cases cited infra. While the refusal of the federal courts to enjoin strikes in violation of no-strike clauses in section 301 actions because of the interdiction of the Norris-La Guardia Act is not always accompanied by an express holding that a labor dispute is involved, it is obvious that the determinations in all such cases must necessarily have been postulating the existence of a labor dispute notwithstanding the element of contract breach, since the applicability of that act, like our Anti-Injunction Act, which is largely patterned upon it, depends upon the finding that such a dispute is present. See, e.g., Castle & Cooke Terminals v. Local 137, etc., 110 F. Supp. 247 (D.C.D. Hawaii, 1953); Associated Tel. Co. v. Communications Workers, 114 F. Supp. 334 (D.C.S.D. Cal. 1953); and see Brotherhood of Railroad Trainmen, etc. v. Central of Ga. Ry. Co., 229 F.2d 901 (5 Cir. 1956). Moreover, the definitions of "labor dispute" in Norris-La Guardia and our own Anti-Injunction Act are substantially the same. Compare 29 U.S.C. Sec. 113 with N.J.S. 2A:15-58.
Some of the federal cases have been more explicit, specifically holding that "[n]othing in the Act [Norris-La Guardia] makes its provisions inapplicable where, after a labor dispute arises, one party takes action which constitutes a breach of a contract between them. It is immaterial that the strike might be a breach of the Union's duty under the collective bargaining agreement or that the controversy itself might be determined by reference to it." A.H. Bull Steamship Co. v. Seafarers' International Union, 250 F.2d 326, 328 (2 Cir. 1957), certiorari denied 355 U.S. 932, 78 S.Ct. 411, 2 L.Ed.2d 414 (1958). In the same tenor, it was said in In re Third Ave. Transit Corp., 192 F.2d 971, 973 (2 Cir. 1951): "It is clear beyond doubt that the parties are in controversy concerning the terms and conditions of employment and, therefore, a `labor dispute' exists between them within the scope of the Norris-La Guardia Act * * *. And this is so whether or not the appellants' conduct constitutes *381 a breach of any collective bargaining agreement between the parties." And see W.L. Mead, Inc. v. International Brotherhood, etc., 217 F.2d 6, 8 (1 Cir. 1954); Alcoa Steamship Co. v. McMahon, 81 F. Supp. 541 (D.C.S.D.N.Y. 1948), affirmed 173 F.2d 567 (2 Cir. 1945), certiorari denied 338 U.S. 821, 70 S.Ct. 65, 94 L.Ed. 498 (1949); Local 205, United Electrical, Radio & Machine Workers of America v. General Electric Company, 233 F.2d 85, 90, 93 (1 Cir. 1956), affirmed 353 U.S. 547, 77 S.Ct. 921, 1 L.Ed.2d 1028 (1957); United Packing House Workers of America v. Wilson & Co., 80 F. Supp. 563 (D.C.N.D. Ill. 1948). See also Annotations, 29 A.L.R.2d 323, 356 et seq. (1953); 156 A.L.R. 652, 678 et seq. (1945).
The United States Supreme Court has not yet ruled on this precise question. But none of its holdings in cognate areas weaken the authority of the great majority of the lower federal courts on the point, starting with the Alcoa Steamship Co. case, supra.
Some authorities have suggested that the philosophy of peaceful settlement of labor-management disputes expressed by the Supreme Court in Textile Workers Union of America v. Lincoln Mills, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957), in its broad construction of section 301 of the Taft-Hartley Act as authorizing the federal courts to exercise a full creative role in the maintenance of industrial peace, may be inconsistent with the continuing vitality of the Norris-La Guardia impediment to injunctive relief. See Wellington, "Judge Magruder and the Labor Contract," 72 Harv. L. Rev. 1268, 1274-81 (1959); Note, "Accommodation of the Norris-La Guardia Act to Other Federal Statutes," 72 Harv. L. Rev. 354, 365 (1958). In this regard it is to be kept in mind, first, that our Anti-Injunction Act does not prohibit the enjoining of peaceful picketing carried on for illegal purposes, Independent Dairy Workers, etc., v. Milk Drivers, etc., Local No. 680, supra, as does Norris-La Guardia. But the precise holding of *382 Lincoln Mills was that specific enforcement of agreements to arbitrate labor contract disputes is not barred by Norris-La Guardia  and this not because the breach of such an agreement removes the case from the labor dispute category but because the language and purposes sought to be achieved by that act did not extend to proscription of judicial enforcement of labor arbitration agreements. See, holding similarly as to application of a state anti-injunction statute, Sanford v. Boston Edison Co., 316 Mass. 631, 56 N.E.2d 1, 156 A.L.R. 644 (Sup. Jud. Ct. 1944). Lincoln Mills simply followed the philosophy of the earlier federal decision in General Electric Company, supra (233 F.2d 85), a case which nevertheless confirmed the applicability of Norris-La Guardia as to a section 301 Taft-Hartley case where a work-stoppage was sought to be enjoined. Also so holding, and distinguishing Lincoln Mills, was the decision in A.H. Bull Steamship Co., supra (250 F.2d 326). See also American Smelting and Refining Co. v. Tacoma Smeltermen's Union, 175 F. Supp. 750, 753-755 (D.C.S.D. Wash. 1959).
Federal court jurisdiction under section 301 of Taft-Hartley over suits involving the breach of a collective bargaining agreement is analogous to the basic equity jurisdiction of our state courts over contract breaches. But just as the Norris-La Guardia Act operates to qualify a plenary federal jurisdiction in such cases, so is the effect of our Anti-Injunction Act to govern the exercise of our state equity jurisdiction. That is to say, since there is nothing in our Anti-Injunction Act (any more than in the Norris-La Guardia Act) to warrant excluding from its protections those labor disputes in which one of the disputants has also breached the bargaining contract, the conclusion necessarily follows that where a labor dispute is involved, even in a breach of contract situation, the exercise of our state equity jurisdiction must conform with the procedures of the act. Buttressing this logic as applied here is the consideration that picketing and striking by unions were characteristically the *383 type of union activity thought by the original proponents of the anti-injunction statutes to require protection against hasty or ill-considered injunctions. United States Pipe, etc., Co. v. United Steelworkers of America, supra (59 N.J. Super., at pages 267-268). Of course, if there is justification for enjoining such acts in a particular case because they involve illegal conduct or purposes, then an injunction will issue (assuming no federal pre-emption), but not until the procedural safeguards provided by the act for the protection of the disputants have been complied with. There is no reason why this should be any less true where the illegality of the conduct complained of is in the circumstance that it constitutes an unjustified breach of contract than where it is violence, or an unlawful purpose sought to be promoted by economic coercion. See, holding a strike in breach of a collective bargaining agreement to be an unlawful purpose, Lion Oil Co. v. Marsh, 220 Ark. 678, 249 S.W.2d 569 (Sup. Ct. 1952); note a similar indication in Kingston Trap Rock, supra; and see also Gentry v. Culinary Workers, Bartenders, etc., 157 Cal. App.2d 766, 321 P.2d 799 (Dist. Ct. App. 1958).
Plaintiff cites authority from other states for the proposition that conduct in breach of a collective bargaining agreement is enjoinable, but much of it is not here relevant. In most of the jurisdictions cited there is no comparable state anti-injunction act. Obviously, therefore, those cases give no consideration to the point presently under inquiry, i.e., whether or not, despite the contract breach, a labor dispute was involved. See, e.g., McCarroll v. Los Angeles County D.C. of C., supra; General Electric Co. v. International Union, etc., 93 Ohio App. 139, 108 N.E.2d 211 (Ct. App. 1952), affirmed per curiam, 158 Ohio St. 555, 110 N.E.2d 424 (Sup. Ct. 1953); Standard Oil Co. v. Oil, Chemical & Atomic Workers, I.U., 144 N.E.2d 517 (Ohio C.P. 1957); Lion Oil Co. v. Marsh, supra.
At least two states, Pennsylvania and Minnesota, have by statute expressly excepted breaches of collective bargaining *384 agreements from the protection of their anti-injunction acts, indicating a legislative understanding that those statutes would otherwise apply notwithstanding the fact of such breach. See De Wilde v. Scranton Building Trades, etc., Council, 343 Pa. 224, 22 A.2d 897, 900 (Sup. Ct. 1941); American Brake Shoe Co. v. District Lodge 9, etc., 373 Pa. 164, 94 A.2d 884, 885-887, 37 A.L.R.2d 675 (Sup. Ct. 1953); Philadelphia Marine Trade Association v. International L. Ass'n, 382 Pa. 326, 115 A.2d 733 (Sup. Ct. 1955); McLean Distributing Co. v. Brewery & Bev. Drivers, etc., 254 Minn. 204, 94 N.W.2d 514, 517 (Sup. Ct. 1959), certiorari denied 360 U.S. 917, 79 S.Ct. 1436, 3 L.Ed.2d 1534 (1959).
There is some support of plaintiff's position in a line of New York cases holding, generally, that a strike in breach of a no-strike clause is enjoinable without reference to the state anti-injunction act (N.Y. Civil Practice Act, § 876-a) since such conduct is not comprehended within the statutory meaning of labor dispute (defined as in our act). See cases cited infra. That line of cases, however, is contradicted by an apparently more authoritative current of authority in the same state which follows the federal approach. See Annotation, 156 A.L.R. 652, 680-682 (1945). The earliest New York cases on the point implicitly assumed the applicability of section 876-a notwithstanding contract violations were involved in the dispute, a natural assumption since the New York anti-injunction act expressly fixes as one of the necessary findings prerequisite to the issuance of an injunction the existence of illegal acts or a breach of contract. See Greater City Master Plumbers Ass'n v. Kahme, 6 N.Y.S.2d 589 (Sup. Ct. 1937); The Nevins, Inc. v. Kasmach, 279 N.Y. 323, 18 N.E.2d 294 (Ct. App. 1938), both of which approved injunctions after section 876-a had been complied with. Later cases, following an inexplicable ignoring of the statute in Uneeda Credit Clothing Stores, Inc. v. Briskin, 14 N.Y.S.2d 964 (Sup. Ct. 1939), held the New York anti-injunction act inapplicable in cases of *385 contract breach. J.I. Hass Co., Inc. v. McNamara, 21 N.Y.S.2d 441 (Sup. Ct. 1940); Republic Aviation Corp. v. Republic Lodge No. 1987, 10 Misc.2d 783, 169 N.Y.S.2d 651 (Sup. Ct. 1957); McLean Trucking Company v. Doyle, 17 Misc.2d 478, 184 N.Y.S.2d 114 (Sup. Ct. 1959), affirmed 8 A.D.2d 789, 188 N.Y.S.2d 943 (1959); Dalzell Towing Co. v. United Marine Division, 279 App. Div. 212, 108 N.Y.S.2d 912 (1951); Stewart Stamping Corp. v. Uprichard, 133 N.Y.S.2d 579 (Sup. Ct. 1954), affirmed 284 App. Div. 902, 134 N.Y.S.2d 392 (1954); and Anchor Motor Freight N.Y. Corp. v. Local Union No. 445, 12 Misc.2d 757, 171 N.Y.S.2d 506 (Sup. Ct. 1958), affirmed 5 A.D.2d 869, 171 N.Y.S.2d 511 (1958). Yet, concurrently, still other New York courts, following the first rulings on the point noted hereinabove, have been consistently holding that a labor dispute does not lose its character as such merely because it occurs in violation of a collective bargaining agreement. Bert Manufacturing Company v. Local 810, etc., 136 N.Y.S.2d 805, 808 (Sup. Ct. 1954); Green Bus Lines v. Flynn, 61 N.Y.S.2d 663 (Sup. Ct. 1945); Holland Laundry, Inc. v. Lindquist, 173 Misc. 121, 16 N.Y.S.2d 140, 141 (Sup. Ct. 1939); De Neri v. Gene Louis, Inc., 261 App. Div. 920, 25 N.Y.S.2d 463 (1941); A.H. Bull Steamship Co. v. Hall, 11 Misc.2d 5, 169 N.Y.S.2d 775, 776-777 (Sup. Ct. 1957). The one case attempting rationalization of these contradictory authorities noted that "an examination of these cases [holding section 876-a operative] show[s] that they arose from some cause outside the contract or one clearly within the definition of a `labor dispute' quoted above." Stewart Stamping Corp., supra (133 N.Y.S.2d, at page 581). Without evaluation of the cogency of this distinction, and for whatever it is worth, it supports the position of the defendants on the issue involved, since the picketing in question here was provoked by and responsive to a labor dispute arising independently of any contractual considerations. In any event, we find no persuasive basis in the adverse New York *386 cases to alter the views hereinabove expressed on the meritorious question at issue.
We consequently conclude that a labor dispute was involved in the present controversy and that the disregard of the requirements of the Anti-Injunction Act in entering the restraint is fatal to its validity. Moreover, the injunction was on its face unwarrantably restrictive. The order must therefore be
Reversed.