The bill in this case was filed for the purpose of restraining the United Electrical, Radio and Machine Workers of America and several individual pickets from obstructing the entrance to the gate and doorway of the Westinghouse Electric Corporation at its plant at 150 Pacific Avenue, Jersey City. At the time the bill was filed, the employees of the complainant, numbering from 1,100 to 1,300, who were members of the United Electrical, Radio and Machine Workers of America, Local No. 456, were on strike. The strike began on January 15th, 1946, and was nationwide. All of the complainant's plants in this and other states were affected by the strike.
The complainant closed all entrances and exits to the Jersey City plant, except one, designated as "Gate No. 1." *Page 46 
On the morning the strike commenced and on every working morning thereafter, pickets formed on the sidewalk in front of the main entrance, above referred to, in two lines walking in opposite directions, each picket close to the one in front of him. The number of pickets at the gate varied from a few to several hundred according to the time of day. Occasionally the pickets doubled the lines. At times these pickets, who were marching, would be augmented by stationary pickets standing shoulder to shoulder directly in front of the entrance.
A small selected group of the officials of the complainant were permitted by the strikers to enter and leave the plant without obstruction. The remainder of the non-striking employees, such as supervisory employees were prevented from entering. When these supervisory employees approached the gate the pickets would draw together in mass formation and prevent the said non-striking employees from entering the plant. A wall of human bodies was thus formed and anyone desiring to enter would have to try to push his way through. When such an attempt was made the pickets would push him back. The pickets were massed so close together in front of the gate that no one could enter the plant.
There was some evidence of violence which, however, was minor.
On January 24th, 1946, the complainant filed its bill of complaint. After reading the bill and affidavits and hearing the testimony presented to me, on the last above mentioned date, I took the matter under consideration. On January 25th, 1946, I advised an order to show cause returnable on January 28th, 1946. The order contained a restraint against mass picketing and provided that the picketing should not be done by more than ten pickets at any one time in front of the gate and that the pickets should be spaced not less than ten paces apart in a single moving line in order that any person desiring ingress or egress to the premises might do so without interference.
On the return day of the order to show cause, the solicitor of the defendants asked the court to vacate the order to show cause and the temporary restraint. After hearing the arguments, *Page 47 
I tentatively denied the application pending the development of the proofs about to be offered. I deem it not necessary to state the arguments in detail other than to say that in my opinion they were lacking in merit both as to law and fact. The main argument was that the picketing "en masse" is an inherent right of the employees and the unions. For the record I, therefore, deny the application of the defendants to vacate the order.
After the tentative denial of the application, I proceeded to hear the testimony of complainant's witnesses in support of the bill of complaint. All of the witnesses were cross-examined by the solicitor of the defendants. At the close of complainant's case, the solicitor of the defendants stated that he did not intend to produce any testimony on behalf of the defendants and would rely on the testimony of complainant's witnesses and upon the answering affidavits filed on behalf of the defendants for the determination of the case.
R.S. 2:29-77.3 provides that no restraint should issue until after the court has heard the testimony of witnesses in support of the bill of complaint "and testimony in opposition thereto, if offered." It, therefore, seems that the legislature intended that the determination of the court should rest upon oral testimony from both sides and not upon affidavits. Whether or not such is the law, I have given due consideration to the answering affidavits of the defendants.
The defendants contend that the company has not satisfied the conditions precedent under R.S. 2:29-77.4 and that, therefore, it may not have the aid of this court. Two points are urged in support of this argument. It was held in Isolantite, Inc., v.United Electrical, c., of America, 130 N.J. Eq. 506, that the statute requires no more than a reasonable effort to settle the dispute by any one of the three methods named in the above mentioned section of the statute. See, also, Phelps Dodge CopperProducts Corp. v. United Electrical, c., of America, 138 N.J. Eq. 3.
However, I will consider both points argued.
There is no showing that the complainant "has failed to comply with any obligation imposed by law which is involved *Page 48 
in the labor dispute in question * * *." The defendants attempted to show by the cross-examination of one of the witnesses that the complainant has failed to comply with certain determinations of the War Labor Board. They argue that complainant has not complied with a War Labor Board ruling pertaining to the disparity in wage rates paid to female employees, commonly referred to as "differentials ascribable to sex." There is nothing before me to show that the ruling of the War Labor Board is in any way involved in the present dispute. On the contrary, the proofs establish that the dispute concerns a general demand by the union for an increase in pay for all its employees regardless of sex.
It is also urged that another requirement of R.S. 2:29-77.4
has not been met by the complainant in that it has failed to make every reasonable effort to settle the dispute. The testimony produced at the hearing shows that the complainant has in fact, negotiated and participated in mediation. The defendants produced no witnesses. Under the circumstances, I find that the complainant has made every reasonable effort to settle the dispute.
I am satisfied from the evidence that the non-striking employees of the complainant, who attempted to gain admission to the plant, were subjected to threats of violence made by the pickets of the defendant union. These threats may be termed "acts of violence" even though they did not result in serious bodily injury. Vice-Chancellor Fielder, in Western Electric Co. v.Western Electric, c., Association, 137 N.J. Eq. 489, stated that even if the evidence of the aforementioned conduct be disregarded, the manner of the picketing here conducted by the defendants was not peaceful, but was unlawful. I have relied upon his opinion and the cases therein cited in reaching this conclusion. I also find that the unlawful acts heretofore committed by the defendants are likely to be continued unless restrained.
Further I conclude that substantial and irreparable injury to the complainant's property will follow unless the relief here sought is granted. In arriving at this conclusion, I do not consider the damages incurred by the complainant by reason of the stoppage of its ordinary manufacturing processes. *Page 49 
Complainant has a property right in its buildings and equipment, the preservation of which requires that it be permitted to bring into the plant such persons as it may determine necessary for this purpose. The complainant has also a right in this case to plan and prepare for the reconversion of its business from a wartime to a peacetime economy. To accomplish this, it requires the presence of "supervisory" employees; that is, those employees not engaged in actual production of the manufactured products.
Some maintenance men and supervisory employees have been admitted to the plant by the defendant union. My attention has not been called to any authorities which give a striking union the right to dictate to an employer the class or number of non-striking employees who will be permitted to enter the premises of the company. The exercise of such control by the defendant union is an unlawful act which may be enjoined by this court.
From the evidence in this case, I find that greater injury will be inflicted upon the complainant by the denial of a restraint against mass picketing than will be suffered by the defendant by the granting thereof. A balancing of the conveniences results in this conclusion. See Isolantite, Inc., v. United Electricalc., of America, 130 N.J. Eq. 506 (at p. 514, 515); affirmed,132 N.J. Eq. 613.
I also find that the complainant is without an adequate remedy at law. This conclusion is obvious.
I will advise an order in accordance with these views in which shall be incorporated a provision for the continuance of the bond heretofore filed in favor of the defendants. *Page 50