## Cosmark, Appellant, v. Struthers Wells Corporation.

Argued November 13, 1962. Before BELL, C. J., MUSMANNO, JONES, COHEN, EAGEN, O'BRIEN and KEIM, JJ.

*George J. Barco* and *Yolanda G. Barco,* with them *Barco and Barco,* for appellants.

*John C. Bane, Jr.,* with him *V. H. Elderkin, Jr., John G. Wayman, J. S. McLaughlin,* and *Elderkin & Martin,* and *Reed, Smith, Shaw & McClay,* for appellee.

*F. Joseph Thomas,* for appellees.

OPINION BY MR. JUSTICE BENJAMIN R. JONES, October 17, 1963:

Three employees (Employees) of the Struther Wells Corporation (Employer), members in good standing of the International Brotherhood of Boilermakers, Iron Ship Builders, Blacksmiths, Forgers and Helpers (A.F.L.-C.I.O.) (International) and Local 636 thereof (Local), on their own behalf and as representatives of the employee-class known as "Forge Employees," instituted an equity action in the Court of Common Pleas of Crawford County against the Employer, the International, the Local and certain International and Local officials.

The complaint averred, inter alia, that: under a collective bargaining agreement between the Employer, the International and the Local, *effective from June 15, 1957 to May 31, 1959,* the Employees were divided into two separate seniority rosters, namely, Forge Weldment Division and Iron Works Division; at a meeting held on May 2, 1959, a majority of the membership of the Local in attendance ratified a *new* seniority provision, known as Article II, of a proposed *new* supplemental collective bargaining agreement which agreement, effective June 1, 1959, executed on September 23, 1959 was adopted by the Employer, the International and the Local: Article II of this *new* agreement eliminated the system of separate seniority rosters theretofore existing between Forge Employees and Iron Works Employees and provided that employees of the Forge Weldment Division seniority list would, as of May 1, 1959, be placed at the bottom of a consolidated seniority list, while still retaining over-all length of service for vacation purposes: the Employer, engaged in the construction and manufacture of boilers and high-pressure vessels in various plants, operated a Forge Division at its Forge shop in Titusville, Crawford County, and an Iron Works Division

at its Iron Works shop, located close by in Titusville; the Employees were employed in Employer's Forge Division at the Forge shop in Titusville; in August, 1957, the Employer began to move its machinery and work, which had been performed prior thereto in the Forge shop of the Forge Division, to the Perry Forge shop and the Iron Works shop; in these latter shops, Forge employees were furloughed and additional Iron Works employees were engaged; by April 1959, all operations at the Forge shop had ceased and the machines and orders on which the Forge employees had customarily worked were being serviced at the Iron Works shop and the Perry Forge shop by Iron Works employees, many of whom had less seniority than the Forge Employees under the collective bargaining agreement of 1957; the furloughed Forge employees, who were thus out of work from April, 1959 to the date of filing the complaint in August, 1960, would have been employed during that entire period and many of the other Forge employees would have been employed for a larger period of time but for the action taken by the Employer, the Unions and the named Union officials.

The complaint further alleged that: the Employer's actions in transferring the work and machinery from the Forge Division shop, culminating in a termination of the work of the operators there on or about April, 1959, with the consequent laying off of the Forge employees who would otherwise have been employed there, constituted a permanent discontinuance of the department, entitling the furloughed employees to severance pay; the Employer's actions in establishing a consolidated seniority list was arbitrary and discriminatory against the Forge employees and wrongfully deprived them of their rights under the 1957 agreement and, by increasing the representation of the Iron Works employees and weakening the representative strength of

the Forge employees, the latter were deprived of their rights as members of a bargaining unit; the International and the Local acted improperly and wrongfully in adopting the consolidated seniority list which was arbitrary and discriminatory as to the Employees and caused them to lose their seniority status; the Unions breached their duty to fairly represent all members of the bargaining unit, including Employees; the Local's actions, approved by International, were directed by certain named executive officers of the Local who, by reason of hostility, failed to press the Employees' grievances and treated the Forge employees' seniority and other rights in bad faith, fraud and discrimination so as to deprive them of their rights; these officers of the Local acted in concert with the Employer to the Employees' detriment, the Local's action being approved by the International.

The relief requested was several-fold: (1) reinstatement to positions, classifications, seniorities and related rights, including rights under the 1957 and 1959 collective bargaining agreements; (2) payment of back wages and vacation pay and/or severance pay; (3) payment of costs and counsel fees; (4) injunctive relief restraining all the defendants from (a) retaliation against the Employees and (b) doing any acts in derogation of the Employees' rights.

Preliminary objections to the complaint were filed which averred, inter alia, that: (1) the matters complained of were *exclusively* within the jurisdiction of the National Labor Relations Board; (2) that the complaint (a) failed to set forth a cause of action and (b) combined causes of action ex contractu and ex delicto.

The court below sustained the preliminary objections and concluded, inter alia, that the matters complained of were *exclusively* within the jurisdiction of

the National Labor Relations Board and not within the jurisdiction of the state court and that the complaint did not set forth a justiciable cause of action. From the order dismissing the complaint this appeal was taken.

In *Smith v. Pittsburgh Gage and Supply Company,* 412 Pa. 171, 194 A. 2d 181, we reviewed recent rulings of the United States Supreme Court on the scope of the jurisdiction of state courts in cases where the activity complained of is arguably subject to the protections of Section 7 or the prohibitions of Section 8 of the National Labor Relations Act.[1] In *Smith,* we said (p. 174) : "The basic rule delineating jurisdiction in this area of the law was recently reiterated by the United States Supreme Court in Local 100 v. Borden, 373 U.S. 690, 693, 83 S. Ct. 1423, 1425 : 'This Court held in San Diego Building Trades Council v. Garmon, 359 U.S. 236, 79 S. Ct. 773, that, in the absence of an overriding state interest such as that involved in the maintenance of domestic peace, state courts must defer to the exclusive competence of the National Labor Relations Board in cases in which the activity that is the subject matter of the litigation is arguably subject to the protections of §7 or the prohibitions of §8 of the National Labor Relations Act.' The rationale of that rule is clear: in its promulgation of rules governing the relations of labor and management as such affect interstate commerce, 'Congress did not merely lay down a substantive rule of law to be enforced by *any* tribunal competent to apply law generally to the parties. It went on to confide *primary* interpretation and application of its rules to *a specific and specially constituted* tribunal [the National Labor Relations Board] . . . . Congress evidently considered that cen-

---

[1] Act of July 5, 1935, c. 372, 49 Stat. 449, as amended, 29 U.S.C. §§157, 158.

tralized administration of specially designed procedures was necessary to obtain uniform application of its substantive rules and to avoid those diversities and conflicts likely to result from a variety of procedures and attitudes toward labor controversies. . . . A multiplicity of tribunals and a diversity of procedures are quite as apt to produce incompatible or conflicting adjudications as are different rules of substantive law.' (Emphasis supplied). Garner v. Teamsters, Chauffeurs and Helpers, 346 U.S. 485, 490, 491, 74 S. Ct. 161, 165, 166. In San Diego Building Trades Council v. Garmon, supra, Mr. Justice FRANKFURTER (79 S. Ct. 778) stated: 'In determining the extent to which state regulations must yield to subordinating federal authority, [the Court has] been concerned with delimiting areas of potential conflict; potential conflict of law, of remedy, and of administration' and that '[w]hen the exercise of state power over a particular area of activity threatened interference with the clearly indicated policy of industrial relations, it has been judicially necessary to preclude the states from acting. [citing cases].'

"The U. S. Supreme Court has established a yardstick for determining when 'due regard for the federal enactment requires that state jurisdictions must yield', i.e., 'when an activity is *arguably* subject to §7 or §8 of the Act, the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board.': (Emphasis supplied). Garmon, supra, 79 S. Ct. 780. See also: Marine Eng. Ben. Association v. Interlake Steamship Co., 370 U.S. 173, 82 S. Ct. 1237.

"To the general rule defining jurisdiction, the U. S. Supreme Court has recognized exceptions in the case of certain activities, even though such activities are arguably, or even concededly, within the protections of §7 or the prohibitions of §8 of the Act. As examples, the Garmon rule has been held inapplicable or irrele-

vant (a) where the activity consists of 'conduct marked by violence and imminent threats to the public order' (United Construction Workers v. Laburnum Construction Corp., 347 U.S. 656, 74 S. Ct. 833; United Automobile Workers v. Russell, 356 U.S. 634, 78 S. Ct. 932); (b) where actions are brought on collective bargaining contracts under §§301, 303 of the Labor Management Relations Act of 1947, even though arguably, or even concededly, unfair labor practices are involved therein (Dowd Box Co. v. Courtney, 368 U.S. 502, 82 S. Ct. 519; Local 174 v. Lucas Flour Co., 369 U.S. 95, 82 S. Ct. 571; Atkinson v. Sinclair Refining Co., 370 U.S. 238, 82 S. Ct. 1318; Smith v. Evening News Association, 371 U.S. 195, 83 S. Ct. 267); (c) where 'the lawsuit [is] focused on purely internal union matters, i.e., on relations between the individual plaintiff and the union not having to do directly with matters of employment and . . . the principal relief sought [is] restoration of union membership rights.' (International Association of Machinists v. Gonzales, 356 U.S. 617, 78 S. Ct. 923)."

In the case at bar, the activities of which the Employees complain are, at least arguably, subject to Sections 7 or 8 of the National Labor Relations Act and within the protection of Section 10 of the Act and, therefore, unless such activities fall within one of the exceptions to the general basic rule, the state court is without jurisdiction in this action. Our inquiry is to determine whether the instant complaint spells out an activity falling within any of the exceptions to the general rule.

Clearly, the activities herein complained of do not consist of "conduct marked by violence and imminent threats to the public order" under *Laburnum* or *Russell,* supra, nor is "the lawsuit focused on purely internal union matters . . . not having to do directly with matters of employment" wherein the principal relief

sought is the restoration of union membership rights under *Gonzales,* supra.

Lastly, does the complaint bring the case at bar within the class of actions based on collective bargaining agreements under Section 301 of the Labor Management Relations Act of 1947[2] whereof the United States Supreme Court has recently spoken in *Smith v. Evening News Association,* 371 U.S. 195, 83 S. Ct. 267, 9 L. Ed. 2d 246.

In *Evening News Association,* supra, the Supreme Court held that, even though the activity which allegedly constituted the breach of a collective bargaining agreement was *concededly* an unfair labor practice under the National Labor Relations Act, supra, a common law action by an individual employee member of a labor organization against the employer for damages for breach of a collective bargaining agreement between such labor organization and the employer in an industry affecting interstate commerce could be entertained in a state court. As a result of *Evening News Association* it is now clear that the common law jurisdiction of state courts to entertain suits upon collective bargaining contracts (brought or held to arise under Section 301 of the Labor Management Relations Act, supra), is not excluded either by the jurisdiction of the National Labor Relations Board or of the Federal Courts.

However, the *only* actions which fall within that class of actions to which state courts' jurisdiction extends under the rationale of *Evening News Association* are "[s]uits for *violation of contracts* between an employer and a labor organization representing employees in an industry affecting commerce . . ., or between any such labor organizations . . .": (Emphasis

---

[2] Act of June 23, 1947, c. 120 et seq., 61 Stat. 136, 29 U.S.C. §185.

supplied) Section 301 of the Labor Management Relations Act, supra, 29 U.S.C. §185. If the action is not based upon a *violation* of the terms and provisions of a collective bargaining contract or agreement between a labor organization and an employer, then the state court has no jurisdiction. In *Schatte v. International Stage Employees and Moving Picture Machine Operators,* 84 F. Supp. 669, aff'd 182 F. 2d 158, reh. den. 183 F. 2d 685, cert. den. 340 U.S. 827, 71 S. Ct. 64, reh. den. 340 U.S. 885, 71 S. Ct. 194, the court stated (84 F. Supp. 672): "any right of recovery under Section 301 must rest upon a *contract* and its asserted violation. The whole Act relates to labor contracts, hence it must be a contract contemplated by the Act, i.e., a collective bargaining contract or contract relating to fair or unfair labor practices." The plain and unambiguous language of the statute compels no other conclusion.

The real crux of the Employees' complaint is stated in paragraph 20 of their complaint: "The execution of the 1959 Agreement, and the actions and agreements of the [Employer] and the [International and Local] with relation to the seniority rights of the [Employees], the Forge Employees, were invalid, improper, void and illegal, for the reasons and averments hereinafter set forth, and resulted in the loss of all of the seniority rights of the [Employees] which they had accumulated prior to May 1, 1959 . . . ." Neither in paragraph 20 nor in any other portion of the complaint is there an averment of a *violation* of the 1959 collective bargaining agreement between the Unions and the Employer. The thrust of the complaint is an attack upon the conduct of both the Unions and the Employer in the negotiations and the incidents which led to and resulted in the formulation of the new seniority provisions in the 1959 agreement and a challenge to the bona fides of the Employer and Union vis-

a-vis the Employees. In effect, the complaint seeks a rescission of the seniority provisions in the 1959 collective bargaining agreement[3] allegedly brought about by improper conduct on the part of the Unions and the Employer and the reinstatement of the pertinent seniority provisions of the 1957 collective bargaining agreement. However, no *violation* of the collective bargaining agreement between the Unions and the Employer is averred and, absent such an averment, the instant case is clearly not within the class of actions contemplated by Section 301, supra, and the rationale of *Evening News Association,* supra.

An examination and a study of this complaint clearly reveals that the basic general rule which excludes the jurisdiction of state courts applies and that the Employees' *exclusive* forum is the National Labor Relations Board and not the state courts. The *Garmon* rule commands the exclusion of this action from the jurisdiction of the state courts and the court below properly dismissed the complaint for lack of jurisdiction.

That which the Supreme Court said in *Borden,* supra (373 U.S. 698) is presently applicable: "In the present case the *conduct* on which the suit is centered, whether described in terms of tort or contract, is conduct whose lawfulness could initially be judged only by the federal agency vested with exclusive primary jurisdiction to apply federal standards."

In view of the conclusions reached, consideration need not be given to other questions raised by the preliminary objections.

Order affirmed. Each party to pay own costs.

---

[3] "There is no natural or vested right to seniority. Seniority arises only as a result of a contract express, or clearly implied: [citing cases]." *Fawcett v. Monongahela Railway Co.,* 391 Pa. 134, 136, 137 A. 2d 768.

222

Mr. Chief Justice BELL and Mr. Justice MUSMANNO dissent.