85 N.J. Super. 453 (1964)
205 A.2d 78
INDEPENDENT OIL WORKERS AT PAULSBORO, NEW JERSEY, PLAINTIFF,
v.
SOCONY MOBIL OIL COMPANY, INC., DEFENDANT.
Superior Court of New Jersey, Chancery Division.
Decided November 30, 1964.
*455 Mr. Howard G. Kulp, Jr. for plaintiff (Messrs. Brown, Connery, Kulp & Wille, attorneys).
Mr. F. Morse Archer, Jr. for defendant (Messrs. Archer, Greiner, Hunter & Read, attorneys).
WICK, J.S.C.
This matter has come before the court upon a motion to dismiss the action on the grounds that (a) the court lacks jurisdiction over the subject matter, and (b) the complaint fails to state a claim upon which relief may be granted. These defenses were originally raised in the defendant's answer, and upon its application have been heard on a preliminary hearing in compliance with R.R. 4:12-4.
After the complaint was filed on December 14, 1963, plaintiff Independent Oil Workers at Paulsboro, New Jersey, hereinafter referred to as the union, moved for temporary injunctive relief, and defendant Socony Mobil Oil Company, Inc., hereinafter referred to as Socony, moved to stay the proceeding pending arbitration. Both motions were denied. Independent Oil Workers, etc. v. Socony Mobil Oil Co., 82 N.J. Super. 159 (Ch. Div. 1964).
The facts before the court at this time are identical to those before the court in the previous proceeding and will not be reiterated.
Socony contends that this court does not have jurisdiction to remedy a breach of a collective bargaining agreement by injunction where the conduct allegedly producing the breach also allegedly is a violation of the National Labor Relations Act. It contends that an injunction, unlike damages, would regulate the conduct, and Congress has vested jurisdiction to regulate such conduct exclusively in the National Labor Relations Board.
*456 In the previous decision of this court, cited above, we said:
"Initially, let it be stated without reservation that this court is of the opinion it has the jurisdiction required to hear and determine the controversy sub judice even though it may constitute what amounts to an unfair labor practice cognizable before the National Labor Relations Board. Donnelly v. United Fruit Co., 40 N.J. 61 (1963); Carpenters & Millwrights Local Union No. 2018, United Brotherhood of Carpenters & Joiners of America, A.F.L.-C.I.O. v. Riggs-Distler & Co., 40 N.J. 97 (1963); Cosmark v. Struthers Wells Corp., 412 Pa. 211, 194 A.2d 325 (Sup. Ct. 1963); Smith v. Evening News Ass'n, 371 U.S. 195, 83 S.Ct. 267, 9 L.Ed.2d 246 (1962); Dowd Box Co. v. Courtney, 368 U.S. 502, 82 S.Ct. 519, 7 L.Ed.2d 483 (1962); * * *." (at p. 171)
This court is still of the opinion that it has jurisdiction. In Smith v. Evening News Association, 371 U.S. 195, 197-198, 83 S.Ct. 267, 269, 9 L.Ed.2d 246 (1962), the United States Supreme Court held:
"The authority of the Board to deal with an unfair labor practice which also violates a collective bargaining contract is not displaced by § 301, but it is not exclusive and does not destroy the jurisdiction of the courts in suits under $ 301. If, as respondent strongly urges, there are situations in which serious problems will arise from both the courts and the Board having jurisdiction over acts which amount to an unfair labor practice, we shall face those cases when they arise."
The New Jersey Supreme Court, in Carpenters and Millwrights Local v. Riggs-Distler & Co., 40 N.J. 97 (1963), has stated:
"In view of Smith v. Evening News Association, 371 U.S. 195, 83 S.Ct. 267, 9 L.Ed.2d 246, decided December 10, 1962, the doctrine of Garmon (San Diego Building Trades Council v. Garmon, 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775) no longer stands in the way of the exercise of concurrent jurisdiction by state courts over a cause of action alleging breach of an employer-union contract relating to wages, hours and other conditions of employment. Such jurisdiction exists under section 301 of the LMRA even though the breach of the agreement may constitute an unfair labor practice." (at p. 99)
In view of this broad statement by our Supreme Court, this court does not agree with Socony's contention that the Smith case rule is limited to cases where only damages are sought. *457 The cases cited by Socony to support its contention do not actually stand for the proposition so urged. Local 100, United Association of Journeymen and Apprentices v H.N. Borden, 373 U.S. 690, 83 S.Ct. 1423, 10 L.Ed.2d 638 (1963), rehearing denied 375 U.S. 872, 84 S.Ct. 28, 11 L.Ed.2d 101 (1963), cited by Socony to demonstrate that Garner v. Teamsters Union, 346 U.S. 485, 74 S.Ct. 161, 98 L.Ed. 228 (1953), and like cases are still very much alive and unimpaired, states in footnote 3 of the court's opinion:
"We do not deal here with suits brought in state courts under § 301 or § 303 of the Labor Management Relations Act, 61 Stat. 156, 158, 29 USC §§ 185, 187, which are governed by federal law and to which different principles are applicable. See, e.g., Smith v. Evening News Assn. * * *"
In Alexander v. Pacific Maritime Association, 314 F.2d 690, 694 (9 Cir. 1963), the court concluded only that "the complaint in its present form does not state a claim for breach of contract under § 301." The case did not indicate any limitation of the type of action that can be brought under section 301. Barunica v. United Hatters, 321 F.2d 764 (8 Cir. 1963), was a case involving a damage action by a union member against the union. The case cannot be said to extend or limit the Smith decision, and the court was quite correct in indicating that section 301(a), dealing with contract violations, and the Smith case, dealing with a breach of a collective bargaining agreement, had no relevance there.
Socony cites the language of Mr. Justice Douglas in Carey v. Westinghouse Electric Corp., 375 U.S. 261, 84 S.Ct. 401, 11 L.Ed.2d 320, 326 (1964):
"But the existence of a remedy before the Board for an unfair labor practice does not bar individual employees from seeking damages for breach of a collective bargaining agreement in a state court, as we held in Smith v. Evening News Assn. * * *" (Emphasis supplied)
Socony seeks to stress the fact that Mr. Justice Douglas mentioned only damages and said nothing about any other form of *458 relief. But he was merely stating the precise holding of Smith based upon the specific facts of that case.
It is the opinion of this court that the Smith case decision implies more than its precise holding and that this court has concurrent jurisdiction in the matter at hand even though the relief sought is an injunction.
We must still consider, however, Socony's contention that the complaint fails to state a claim upon which relief may be granted. The basis of this contention is that no "unlawful acts" have been committed as required by the New Jersey Anti-Injunction Act, N.J.S. 2A:15-53. This statute provides that no injunction shall issue in a case involving or growing out of a labor dispute unless the court finds, among other things, that "unlawful acts have been committed and are likely to be continued unless restrained * * *."
No New Jersey court has defined the kind of conduct which amounts to "unlawful acts" within the meaning of the statute. In the earlier decision of this court in this matter a finding was made that Socony had committed "unlawful acts" as required to be found under N.J.S. 2A:15-53(a). However, the court pointed out at that time that the decision with regard to its findings of "unlawful acts" was narrowly limited to the union's request for interim relief pending final hearing. 82 N.J. Super. 159, 175.
The court is presently of the opinion that the term "unlawful acts" in our statute does not include violations of the National Labor Relations Act. To so construe the statute would render it unconstitutional, for the New Jersey Anti-Injunction Act does not indicate that it is only applicable when there is a collective bargaining agreement in effect. It is generally applicable whenever its terms are satisfied. Therefore, to construe "unlawful acts" to include violations of the National Labor Relations Act would, in effect, be construing the New Jersey statute to give the New Jersey courts the right to enjoin any violation of the NLRA, with or without a collective bargaining agreement. This construction would place N.J.S. 2A:15-53 in direct conflict with the NLRA *459 and would make the New Jersey statute invalid as interpreted and applied. Hill v. Florida, 325 U.S. 538, 65 S.Ct. 1373, 89 L.Ed. 1782 (1945).
However, this court's interpretation of New Jersey law is not the controlling factor in disposing of this case. Under a section 301 suit for the violation of a collective bargaining contract, in either a federal or a state court, the suit is governed by federal law. Teamsters, Chauffeurs, Warehousemen & Helpers v. Lucas Flour Co., 369 U.S. 95, 82 S.Ct. 571, 7 L.Ed.2d 593 (1962); Textile Workers Union v. Lincoln Mills, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957).
In Lucas Flour the court said:
"It was apparently the theory of the Washington court. that, although Textile Workers Union v. Lincoln Mills * * * requires the federal courts to fashion, from the policy of our national labor laws, a body of federal law for the enforcement of collective bargaining agreements, nonetheless, the courts of the States remain free to apply individualized local rules when called upon to enforce such agreements. This view cannot be accepted. The dimensions of § 301 require the conclusion that substantive principles of federal labor law must be paramount in the area covered by the statute. Comprehensiveness is inherent in the process by which the law is to be formulated under the mandate of Lincoln Mills, requiring issues raised in suits of a kind covered by § 301 to be decided according to the precepts of federal labor policy.
More important, the subject matter of § 301(a) `is peculiarly one that calls for uniform law.' * * *
The importance of the area which would be affected by separate systems of substantive law makes the need for a single body of federal law particularly compelling. The ordering and adjusting of competing interests through a process of free and voluntary collective bargaining is the keystone of the federal scheme to promote industrial peace. State law which frustrates the effort of Congress to stimulate the smooth functioning of that process thus strikes at the very core of federal labor policy. With due regard to the many factors which bear upon competing state and federal interests in this area * * * we cannot but conclude that in enacting § 301 Congress intended doctrines of federal labor law uniformly to prevail over inconsistent local rules." (369 U.S., at pp. 103-104)
In light of the preceding statements of the United States Supreme Court, this court believes that it must either apply the Norris-LaGuardia Act, 29 U.S.C.A. § 107, directly *460 in the instant case or at least interpret our own Anti-Injunction Act in light of the Norris-LaGuardia Act so that it is not incompatible with it. The Norris-LaGuardia Act is certainly part of the federal labor policy and as such must get primary consideration in any suit for an injunction under section 301.
Section 301 (a) has not in any way changed or removed the limitations imposed by the Norris-LaGuardia Act upon the jurisdiction of the courts to grant injunctions in labor disputes. Sinclair Refining Co. v. Atkinson, 370 U.S. 195, 82 S.Ct. 1328, 8 L.Ed.2d 440 (1962), followed in Chauffeurs, Teamsters & Helpers v. Yellow Transit Freight Lines, Inc., 370 U.S. 711, 82 S.Ct. 1293, 8 L.Ed.2d 792 (1962).
Before an injunction can issue under the Norris-LaGuardia Act, it is necessary for the court to find that "unlawful acts have been threatened and will be committed unless restrained or have been committed and will be continued unless restrained * * *." 29 U.S.C.A. § 107(a).
In interpreting the meaning of this language, Chief Judge Hutcheson of the Fifth Circuit said, in Brotherhood of Railroad Trainmen v. Central of Georgia Railway Company, 229 F.2d 901 (1956):
"It is plain from the language and the context that the words `unlawful acts' mean violence, breaches of the peace, criminal acts, etc., and that such terms do not include, they do not constitute a general reference to, anything that may be considered illegal but apply specifically to the acts of violence which authority is calculated to control." (at p. 905)
The only unlawful acts alleged by the union in the present controversy are breaches of the collective bargaining agreement which are also alleged to be violations of the National Labor Relations Act. In United Packing House Workers v. Wilson & Co., 80 F. Supp. 563, 569-570 (N.D. Ill. 1948), the same contentions were made and the court there answered:
"The nearest approach to charging `that unlawful acts have been threatened and will be committed unless restrained' is the charge that contract violations which are unfair labor practices have been committed. *461 Such allegations are not `unlawful acts' within the meaning of Section 7 of the [the Norris-La Guardia] Act."
In view of the foregoing it is the opinion of this court, either in applying the Norris-LaGuardia Act directly or in construing the New Jersey Anti-Injunction Act in light of the federal labor law and policy, that there can be no injunction issued in a section 301 case unless there is violence, or the like.
There having been no allegations of violence in the complaint, this court cannot give any kind of injunctive relief. The complaint, therefore, does fail to state a claim upon which relief may be granted and the defendant's motion to dismiss the complaint is sustained.