CARIBE CONSTRUCTION CO., INC., petitioner

v.

EDMUND L. PENN, Deputy Commissioner for labor, Respondent VIRGIN ISLANDS LABOR UNION, Intervenor

Nos. 14,952 and 14,970

United States Court of Appeals

Third Circuit

Argued January 26, 1962

Decided March 26, 1965

*See, also, 342 F.2d 964*

JOHN L. MADURO (BIRCH, MADURO & DEJONGH), Charlotte
Amalie, Virgin Islands, *for Virgin Islands Labor Union,
appellant in No. 14,952*

ALEXANDER A. FARRELLY, Assistant United States Attor-
ney, Charlotte Amalie, Virgin Islands, *for Edmund L.
Penn, Deputy Comm'r for Labor, appellant in No. 14,970*

WILLIAM W. BAILEY (BAILEY & WOOD), Charlotte Amalie,
Virgin Islands, *for Caribe Const. Co., Inc., appellee*

Before MARIS, McLAUGHLIN and FREEDMAN, *Circuit Judges*

MARIS, *Circuit Judge*

This appeal from a judgment of the District Court of
the Virgin Islands involves the validity of a certification
by the defendant, Edmund L. Penn, Deputy Commissioner
for Labor of the Department of Agriculture and Labor of
the Government of the Virgin Islands, that the Virgin Is-
lands Labor Union, S.I.U., AFL–CIO, had been selected
by a majority of the employees of the plaintiff, Caribe Con-
struction Company, Inc., as their collective bargaining
representative.

It appears that the Union on November 14, 1961 filed
with the Department of Agriculture and Labor a petition
for certification as the bargaining representative of a unit

of 27 employees of the Company. The petition was accompanied by written authorizations, signed by 23 of the employees, in the following form:

"I, the undersigned, hereby authorize the Virgin Islands Labor Union, S.I.U, AFL–CIO, to be my exclusive collective bargaining agency in all matters pertaining to pay rates, hours of work, conditions of employment and to negotiate and execute a contract in my behalf, and hereby file my application for membership in said union.

"This authorization suspends and revokes any other authorization previously given."

On November 22, 1961 the Deputy Commissioner requested Roger F. Moran, the president of the Company, to appear on November 27, 1961 for an informal conference in regard to the petition. The conference was held and was attended by Moran and by Roy Gottlieb, executive director of the Union. At the conference Moran presented written statements, signed by 29 of the Company's employees, including the 23 individuals referred to above, in the following form, with individual variations in 7 instances:

"To Whom It May Concern:
I am an employee of Caribe Construction Company, Inc.
I have *not* asked that the Virgin Islands Labor Union be the bargaining representative between myself and my employer.
I have no grievance with nor complaint against Caribe Construction Company. I am satisfied with my working conditions, my wages and the opportunity for advancing myself as an employee of Caribe.
I DID NOT READ THE UNION PETITION I SIGNED.
November 24, 1961."

At the hearing in the district court Moran testified that these statements had been prepared by him and read by him to each of the Company's employees and that all had signed them.

Faced with these conflicting sets of statements the Deputy Commissioner decided to make a personal investiga-

tion. He himself interviewed 19 (all he could locate) of the 23 employees who had signed the Union authorization papers. At the subsequent hearing in the district court he testified: "I asked them whether they had signed this application, did they know what it is, and they admitted their signatures. . . . They admitted to their signatures in every instance. . . . They said they had signed a statement that the employer had prepared and given them to sign. . . . Some of them showed indifference and some were undecided as to why they signed this other document that the employer presented. . . . They could not tell me why they had signed it. . . . My investigation disclosed that each of the employees had signed these documents—these applications for representation, and that they had not withdrawn these applications. . . . In questioning the employees some of them did say that they had signed this other document—they were uncertain, but they had not withdrawn their application from [sic] membership for representation."

At the conference on November 27, 1961 Moran had requested the Deputy Commissioner to hold an election of the employees to determine their choice of collective bargaining representative. However, after making his investigation the Deputy Commissioner concluded that a majority of the employees had authorized the Union to represent them in collective bargaining with the Company and that the statements prepared by Moran and signed by the employees at his request could not be regarded as having been intended by the employees to withdraw that authority. On the contrary, the Deputy Commissioner testified that he believed those papers to be an interference by the employer within the selection of collective bargaining representative by its employees. Accordingly the Deputy Commissioner did not grant Moran's request for an election but on December 28, 1961 formally certified that the Union had been selected by a majority of the employees of the Company as their rep-

resentative for the purpose of collective bargaining and that, pursuant to 24 V.I.C. chapter 3, the Union was the exclusive representative of all the employees in the collective bargaining unit.

■■ On January 11, 1962 the Company, pursuant to 5 V.I.C. § 1421, filed a petition for a writ of review of the Deputy Commissioner's action. Twelve days thereafter the Company filed a petition and notice of appeal under 24 V.I.C. § 70. The latter section confers jurisdiction upon the district court to review only "a final order of the Commissioner granting or denying in whole or in part the relief sought." This language was taken directly, in haec verba, from section 10(f) of the National Labor Relations Act, 29 U.S.C.A. § 160(f), which has been held by the Supreme Court not to apply to the certification of a collective bargaining representative because such a certification is not an order within the meaning of that section. American Federation of Labor v. Labor Board, 1940, 308 U.S. 401. This language of 24 V.I.C. § 70, the precursor[1] of which was enacted after the decision of the American Federation of Labor case, must be given the same meaning on principles of statutory construction which are settled in the Virgin Islands. Municipality v. Stakemann, D.C.V.I. 1924, 1 V.I. 60 ; James v. Henry, D.C.V.I. 1957, 3 V.I. 273, 157 F.Supp. 226; Williams v. Dowling, 3 Cir. 1963, 4 V.I. 465, 318 F.2d 642. It follows that the district court did not have jurisdiction of the petition and notice of appeal filed under 24 V.I.C. § 70.

■ The petition for a writ of review which the plaintiff filed under 5 V.I.C. § 1421 et seq., stands on a sounder footing, however. Under § 1421 any party to a proceeding before or by an officer may have the decision or determination thereof reviewed by the district court for errors

---

[1] Ordinance, Municipal Council of St. Thomas and St. John, approved Dec. 6, 1949 (Bill No. 51).

therein. Under § 1422 the writ of review may be allowed where there is no appeal or other plain, speedy, and adequate remedy and where the officer appears to have exercised his functions erroneously, or to have exceeded his jurisdiction, to the injury of some substantial right of the plaintiff. Here the certification proceeding was a proceeding before an officer, the Deputy Commissioner, and the certification itself was a determination by him which affected a substantial right of the Company, the right to have to bargain collectively only with a representative who was actually authorized by its employees to represent them. As to this determination the Company had no appeal or other plain, speedy and adequate judicial remedy. The district court accordingly properly entertained the proceeding before it as a writ of review under 5 V.I.C. § 1421 et seq.

24 V.I.C. § 67(a), as it read prior to the amendment of April 6, 1964, provided:

"(a) Whenever a question arises concerning the representation of employees, the Commissioner may investigate such controversy and certify to the parties, in writing, the name or names of the representatives that have been designated or selected. In any such investigation, the Commissioner shall provide for an appropriate hearing upon due notice, and may take a secret ballot of employees or utilize any other suitable method to ascertain such representatives."

As we have seen, the Deputy Commissioner, acting for the Commissioner, did investigate the controversy as to the authority of the Union to represent the Company's employees. Instead, however, of taking a secret ballot of the employees, as the Company requested, he interviewed personally all of the employees whom he could locate (19 out of 23) and ascertained from them that they had signed an authorization for the Union to represent them and had not withdrawn that authorization, even though they had signed the statement prepared by Moran. Acting on the informa-

tion thus obtained the Deputy Commissioner made the certification here under attack.

The question before the district court on the writ of review was whether the Deputy Commissioner in so doing acted erroneously or beyond his jurisdiction. The court held a hearing on October 30, 1963 at which the Deputy Commissioner and others testified. On May 5, 1964 the district court filed its findings of fact and conclusions of law and on May 27, 1964 entered the judgment appealed from directing that unless the Commissioner held an election of the Company's employees within thirty days to ascertain their wishes with respect to certification of a representative, the certification of the Union made by the Deputy Commissioner on December 28, 1961 should be cancelled. The action of the court was based upon its conclusion that the Deputy Commissioner should have given more weight to the statements signed by the employees which Moran prepared and in the light of them should have held an election by the employees to ascertain their desires as to a collective bargaining representative.

In reaching this conclusion the court relied, at least in part, on section 63–1(c), Title 24, of the General Rules and Regulations promulgated by the Commissioner with the approval of the Governor under the authority of 24 V.I.C. § 63(b). The regulation relied upon reads as follows:

"(c) When a petition for certification has been filed, the Commissioner or his duly authorized representatives shall confer with and may hold informal conferences with interested parties and ascertain the facts. He shall encourage the parties to agree upon the appropriate unit and a suitable method by which the representative is to be determined. In cases where the parties agree that an election be held to ascertain the wishes of the employees, the Commissioner shall as soon as possible conduct an election by secret ballot. In cases where the parties agree upon other suitable methods by which the representative is to be determined, the Commissioner shall by such method ascertain the employees' wishes. If the parties are unable to agree upon a suitable method, the Com-

missioner may hold an appropriate hearing upon reasonable notice and may either dismiss the petition or direct that an election be held." 24 V.I. Rules and Regulations § 63–1(c).

The district court relied upon the last sentence of this regulation. Its position is that if in a certification proceeding there is continued disagreement between the parties as to the method to be employed to ascertain the employees' wishes, the Commissioner after holding a hearing must either direct that an election be held or dismiss the petition for certification.

■■ We think that the regulation must be read in the light of the statute which it was intended to carry out and that as so read it may not be construed as thus narrowly restricting the Commissioner's power. It will be recalled that the statute, 24 V.I.C. § 67(a), provides that when a question of representation arises the Commissioner is empowered to investigate the matter and certify to the parties the names of the representatives that he finds have been selected by the employees. The statute specifically authorizes him in such an investigation to "take a secret ballot of employees or utilize any other suitable method to ascertain such representatives." If the regulation is construed to limit him to either holding an election or dismissing the petition, the power to "utilize any other suitable method to ascertain such representatives" is denied to him although the statute specifically confers this power upon him. 24 V.I.C. § 63(b), under which this regulation was promulgated, authorizes the Commissioner, with the approval of the Governor, to "make, amend, and rescind such regulations as may be necessary to carry out the provisions of this chapter." Obviously § 63(b) did not confer upon the Commissioner authority thus by regulation to strike an important grant of power from the statute under the guise of carrying it out. We think that in order to render the regulation valid it must be read as recognizing the statutory

power of the Commissioner in his discretion to dismiss the petition or to direct an election but not as intending to make these his only alternatives or to withdraw his power to "utilize any other suitable method to ascertain such representatives" in his discretion. We conclude that the Deputy Commissioner was not compelled by the regulation to order an election in this case.

 It follows that the Commissioner has the discretion under § 67(a) to determine which method of investigation to employ in a given situation. The district court may not interfere with the valid exercise of the Commissioner's discretion as to choice of method even though it may think that another method than the one he has chosen would have been more appropriate. N.L.R.B. v. Falk Corporation, 1940, 308 U.S. 453; Oughton v. N.L.R.B., 3 Cir. 1940, 118 F.2d 486, 491–492. It must be remembered that a certification proceeding is of a nonadversary fact-finding character in which the Commissioner plays the part of a disinterested investigator, seeking merely to ascertain the desires of the employees as to their representation. Southern S.S. Co. v. N.L.R.B., 3 Cir. 1941, 120 F.2d 505, 506–507. The duty of the court in reviewing such a proceeding under 5 V.I.C. § 1421 is to determine whether the methods which the Commissioner chose to ascertain the facts and the procedure which he followed in that regard were so unsuitable as to make his choice of methods an abuse of discretion and the employment of them an erroneous exercise of the power conferred upon him by 24 V.I.C. § 67(a). The court is, of course, also empowered to determine whether the Commissioner failed to follow the procedure required to carry out his chosen method of investigation or failed to give effect by his certification to the facts which his investigation disclosed.

 We find nothing in the record in this case which would support a finding that the Deputy Commissioner

189

abused his discretion in choosing to ascertain the facts as to the employees' choice of representative through personal interviews with the employees themselves. Certainly in a unit as small as 27 employees it was not inappropriate for the Deputy Commissioner himself to undertake to interview each of the employees whom the Union claimed had authorized it to be their representative in order to ascertain whether the employees had actually signed the authorizations and whether they had subsequently withdrawn them. This the Deputy Commissioner did and he ascertained, as he testified, that each of the 19 employees whom he was able to interview had signed the authorization and had not withdrawn it even though the employee had also signed the statement which Moran had prepared. Thus the Deputy Commissioner's investigation did serve the statutory purpose of disclosing the fact which formed the basis of his subsequent certification.

No criticism is made of the way in which the Deputy Commissioner carried out his investigatory procedure except that he did not give sufficient consideration and weight to the statements signed by the employees and which Moran had prepared. The court found that the Deputy Commissioner did hold a hearing and conduct an investigation as required by law. But it concluded that the Deputy Commissioner erred in giving no weight to these statements. In so concluding we think that the district court erred. For it became apparent from the Deputy Commissioner's investigation that the most significant assertion which these statements made, namely, that the signer had not asked the Union to be his bargaining representative, was false.

 To give any effect to documents thus prepared and procured by the Company's president in an obvious effort to prevent the designation of the Union as the bargaining representative of its employees would be to condone action on his part which the Deputy Commissioner was justified

to find tended to restrain, coerce or interfere with the employees in the exercise of their right to join the Union, a forbidden practice under 24 V.I.C. § 65(8). The district court apparently equated this action with the mere expression of an employer's views to his employees. But to put words into the employees' mouths by which they are made falsely to deny having given an authorization to the Union which they have in fact given and have not withdrawn is to pass far beyond the bounds of an uncoercive expression of views, as the Deputy Commissioner rightly concluded. The cases upon which the district court relied involved only such uncoercive expressions of views and are not controlling here.

The judgment of the district court will be reversed and the cause remanded with directions to dismiss the petition for a writ of review filed January 11, 1962 and the petition and notice of appeal filed January 23, 1962.