IVAN BROWNE, Plaintiff

v.

MUSICIAN'S PROTECTIVE UNION, Defendant

Civil No. 556-1965

Municipal Court of the Virgin Islands

Div. of St. Thomas and St. John

April 19, 1966

289

MAAS and IRELAND (THOMAS D. IRELAND, of counsel),
St. Thomas, Virgin Islands, *for plaintiff*

BIRCH, MADURO & DE JONGH (JOHN L. MADURO, of counsel), St. Thomas, Virgin Islands, *for defendant*

FARRELLY, *Municipal Judge*

## OPINION OF THE COURT

Ivan Brown could not join the Musician's Protective Union, Local # 491, affiliated with the American Federation of Musicians. Yet, this union had a closed shop agreement with the Virgin Isles Hilton. The union took to membership only citizens of the United States or those who declared an intention so to become; by constitutional provision, it excluded resident as well as "bonded" aliens.[1] Browne was by occupation a folk singer; by national origin, he was an alien.

Undeterred by the shibboleth that the law cannot compel the spirit of brotherhood, Wellington, *The Constitution, The Labor Union and "Governmental Action"*, 70 Yale L.J. 45 (1961), Browne commenced this action, asking for a temporary restraining order, a preliminary injunction prohibiting the defendants from interfering with his employment as an entertainer at the Virgin Isles Hilton, and for damages of $10,000 for interference with plaintiff's performance, otherwise than inducing breach at the Virgin Isles Hilton.

The applications for a temporary restraining order and for a preliminary injunction were set down for hearing, ex parte, on October 1, 1965. Plaintiff was represented by Maas & Ireland, Esqs., (Thomas D. Ireland, Esq., of coun-

---

[1] Art. 3 § 15A of the Constitution, By-Laws and Policy of the American Federation of Musicians states: "No local shall issue a card of membership to an applicant unless he be a citizen of the United States or Canada. However, if an applicant does not hold citizenship in the United States, he must, in order to become eligible for membership, declare his intention of becoming a citizen of that country. . . ."

sel). Plaintiff's motions were denied without prejudice to whatever legal and/or equitable relief he may be entitled after a trial on the merits.

The matter was tried on its merits on April 19, 1966. Both plaintiff and defendant musicians' union, by and through its president Aubrey Haynes, appeared, with counsel. The union was represented by Birch, Maduro & DeJongh, Esqs. (John L. Maduro, Esq., of counsel). After the parties had put in their respective proofs and defenses, the matter was taken under advisement.

These are the facts out of which this action has arisen. Ivan Browne is an alien—a British subject. As a folk singer, he found gainful employment at the Virgin Isles Hilton. Ten months after he had been so employed, after unsuccessful efforts on his part to become a union member and efforts on the part of the hotel to retain his services, he was discharged by the hotel, on the evening of September 7, 1965.

The union, through its president, had informed the hotel that unless Browne was accompanied instrumentally by one of the union members, his employment would have to be terminated. That, in the alternative, if Browne's services were not dispensed with, the local would "pull" its musicians out of the hotel. Federation rules,[2] said the union through its president, prohibit union members from playing in an establishment where non-union members play except with the permission of the local executive board. However, the local executive board had no intention to grant such permission because Browne had engaged in unfair local competition. Neither would the union admit Browne to membership.

Yet, it is uncontroverted that throughout all of this time, the union, despite its best efforts, could not come up with a

---

[2] Art. 13 § 6 reads; No band or orchestra composed of members of the Federation or individual members shall be permitted to render services for any function in any jurisdiction with non-members in any local of the Federation without the permission of the local Executive Board or duly authorized official or officials thereof.

suitable replacement for plaintiff Browne. Faced with the removal of union members and their subsequent unavailability as a source from which the hotel could obtain entertainers for the benefit of its guests, and placement on an unfit "list", the management of the Virgin Isles Hilton separated Browne from hotel employment.

The Hilton has a working agreement with the local to employ union musicians only.

The defendant union attributes the factual anomaly of a closed union[3] and a closed shop[4] to its parent body, the American Federation of Musicians. It apparently overlooks the fact that permission could have been given to plaintiff Browne to work. Permission was withheld because Browne had engaged, in the words of the local president, in unfair competition.

Plaintiff was throughout this sequence of events ready and willing to join the local.

This suit followed.

In this state of the record, the principal issue presented for resolution is whether a closed union coupled with a closed shop is a legitimate objective of organized labor? Phrased otherwise, may the union refuse to admit Browne to membership and yet bring concerted economic pressure on the Virgin Isles Hilton to terminate his services owing to lack of union membership? Generally speaking, if the answer to that question is "no", plaintiff may be entitled to injunctive relief and to damages.

In this jurisdiction, the policy and practice of collective bargaining is grounded in 24 V.I.C. § 61 et seq. Anno., as amended. The labor relations law of the Virgin

[3] A union which arbitrarily denies admittance of qualified workers. Hughes v. Lucky Stores, Inc., 15 CCH Lab. Cas. par. 64, 824 at 74, 625, J. Carter dissenting, 198 P.2d 885 (Cal. 1948).

[4] An employer cannot hire a prospective employee unless he is a member in good standing of the union serving as the collective bargaining representative. See, generally, McDermott, Union Security and Right-to-Work-Laws, 16 LLJ 667, (1965).

Islands may be properly denominated a little Wagner Act because of its historic antecedents. This bit of historicity is important because of principles of statutory construction which are settled in the Virgin Islands, Williams v. Dowling 318 F.2d 642, 4 V.I. 465 (3rd Cir. 1963). This statute establishes a territorial policy designed to encourage the policy and practice of collective bargaining. Collective bargaining generally has been considered to absorb and give statutory approval to the philosophy of bargaining as worked out in the labor movement in the United States, Wellington, supra p. 358–59. This is a philosophy in which union security[5] is a central tenet. Wellington, supra, p. 359. Expressed otherwise, our labor relations statute embodies a territorial policy which encourages the formation of union security agreements, 24 V.I.C. § 65(3), including the closed shop and union shop, subsuming lesser forms of union security.

The individual employees can participate meaningfully in this vital process [of collective bargaining] only through the union; and membership is the condition precedent to such participation. By sponsoring collective bargaining and the institution associated with it as part of our [territorial] labor policy, the [Virgin Islands] Government has helped to make union membership important to the working man in the Virgin Islands, Wellington, supra, p. 359.

 The heart of our labor-management statute—the affirmative encouragement of union organization and collective bargaining—is found in 24 V.I.C. § 64(a) reading as follows:

"Employees shall have the right of self-organization, to form, join or assist labor organizations, to bargain collectively through representatives of their own choosing and to engage in concerted

---

[5] When speaking of union security, it is well to remember that there are a number of different types. These vary from the absolute form of the closed shop with the closed union [as in the instant case] to those that contain the most limited forms of coercion as found in the maintenance-of-membership and agency shops, McDermott, supra, n. 2, p. 668.

activities for the purpose of collective bargaining or other mutual aid or protection. . . ."

It would seem clear based on a reading of this section, that unions in the Virgin Islands may use various forms of concerted activities such as strikes, picketing, or boycotts to enforce any objective that is reasonably related to a legitimate interest of organized labor, James v. Marinship Corp., 155 P.2d 329. But the objective of concerted labor activities must be proper and its accomplishment must be sought by lawful means. Otherwise, the person injured by such activity may obtain injunctive relief or damages, Restatement, Torts §§ 775, 784. We may generalize that any intended and unprivileged interference which causes loss to either party to a transaction is actionable by the party suffering the loss. 1 Harper & James, Torts §§ 6.9, 499, 500 (1956); and so defendants, similarly situated, have been subjected to liability for refusing workers admittance to a union, thus causing their discharge for nonmembership —such refusal amounting to the intentional doing of a wrongful act without legal or social justification, Dorrington v. Manning, 4 A.2d 886 (1939). Accordingly, a union cannot maintain an arbitrarily closed union and a closed shop, and then use economic pressure to compel the discharge of a worker for lack of union membership when it has arbitrarily excluded him from such membership, Bautista v. Jones, 155 P.2d 343 (1944). This is the view adopted by the Restatement, Torts § 810.

 Unlike its bigger brother, the Virgin Islands Labor Union, cf., Brief For Appellant Penn, p. 31, Caribe Construction Co. v. Penn, 342 F.2d 964, 5 V.I. 180 (3rd Cir. 1965), defendant Musicians' Union only admits to membership United States citizens or those who have declared an intention so to become. Beyond contravention, it refused to admit this plaintiff to membership and then brought concerted economic pressure on the Virgin Isles

Hilton to affect his dismissal. Both the Common Law and the Restatement proscribe such conduct by a union because it is not a legitimate objective of organized labor. Its conduct can only be spared the vice of illegality if defendant can point to a provision of our labor relations law which gives the union the right to maintain a closed or partially closed membership together with a closed shop. Certainly, a reasonable not to say constitutional reading of 24 V.I.C. § 66 Anno., together with its underlying policy, requires that unions chosen to represent employees must be open to all who wish to join, James v. Marinship supra, 155 P.2d 329 (1944). At least such open membership more nearly comports with the statutory duty of fair representation imposed on unions in the Virgin Islands by section 66[6] of our Labor Relations Law, Steele v. Louisville & N.R.R. 323 U.S. 192 (1944), Ford Motor Co. v. Huffman, 345 U.S. 330, 337–39 (1953). Failing such an admission, defendant would have to refrain from enforcing its union security agreement to the disadvantage of plaintiff Browne.

Given these facts and the foregoing principles, it would seem that plaintiff is entitled to injunctive relief and to damages.

■ With regard to injunctive relief, the court is confronted at the outset with 24 V.I.C. §§ 341–351 (1963). For purposes of facilitating our construction of that statute, we may appropriately label it a little Norris-LaGuardia Act. It imposes severe limitations on the injunctive power of the courts of the Virgin Islands in labor disputes, 24 V.I.C. Anno. § 341.

The threshold question then is whether the case made out by the pleadings and the proofs involves or grows out of a labor dispute within the meaning of section 349 of

---

[6] Representatives designated or selected for the purpose of collective bargaining by the majority of the employees in a unit appropriate for such purposes, shall be exclusive representatives of all the employees in such unit for the purposes of collective bargaining in respect to rates of pay, wages, hours of employment, or other conditions of employment. . . .

the aforesaid title? Following closely on its heels, is the subsidiary question whether this court, as a court of the Virgin Islands, is foreclosed, owing to lack of jurisdiction, from enjoining defendant's conduct or any of it?

■■ The term "labor dispute" includes any controversy concerning terms or conditions of employment, or concerning the association or representation of persons in negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of employment, being expressly exempt from any requisite that ". . . the disputants stand in the proximate relation of employer and employee", 24 V.I.C. Anno. § 349(c). As to participants, it suffices that a case shall be held to involve or to grow out of a labor dispute when it involves persons who are engaged in the same industry, trade, craft, or occupation, or have a direct or indirect interest therein, § 349(a); and a person or association shall be held to be participating or interested in a labor dispute if relief is sought against said person or association, § 349(b).

■ Certainly, there was a dispute between the Virgin Isles Hilton and the defendant union. The latter insisted that the plaintiff's services be terminated because he was not a member of the union. The employer resisted this termination. If, the employer was told, the services of the plaintiff were not dispensed with, the union would have its members refrain from providing entertainment at the hotel. In other words, the members of Local 491 would cease or refuse to work for the Hilton. The union's interest in this dispute is found in the fact that its president continuously argues that Browne's employment at the Hilton constituted unfair competition to the union members; Browne was not a member of the union, but his interest is too obvious to require emphasis. Plaintiff and defendants are certainly engaged in the same craft or occupation, to wit, musicians. The definition of a "labor

dispute" 24 V.I.C. Anno. § 349(c), also inclines one to the view that the matter in controversy is comprehended within since it includes any controversy concerning terms or conditions of employment, or concerning the association or representation of persons, . . . or seeking to arrange terms or conditions of employment regardless of whether or not the disputants stand in the proximate relation of employer and employee. See, Commercial Can Corp. v. Local 810 Brotherhood of Teamsters, 40 CCH Lab. Cas. par. 66, 575 at 70, 634, 160 A.2d 855 (N.J. 1960).

�In Admittedly, the Legislature of the Virgin Islands has defined the term "labor dispute" in exceedingly broad language. But whatever objections the parties or either of them may have to its broad sweep is to be directed not to this forum but to another. We are bound by this definition and conclude as a matter of law that the parties are involved in "a labor dispute" within the intendment of the anti-injunction statute.

▐ Such a determination of course brings us face to face with the relevant statute, for courts of the Virgin Islands are denied all power to issue both temporary and permanent injunctions in non-violent labor disputes, 24 V.I.C. Anno. § 341. The only exception to this broad prohibition is to be found in § 345. The explicit statement therein of the preconditions required for the issuance of an injunction in a labor dispute clearly suggests that such an extraordinary remedy cannot issue at all in situations such as the one at bar, not involving violent conduct. See, Comment, Labor Injunctions and Judge-Made Labor Law: The Contemporary Role of Norris-LaGuardia, 70 Yale L.J., 70, 74 (1960).

▐ Of equal importance, § 342[7] expressly saves from injunctive remedy such specific activities as ceasing or re-

---

[7] No court of the Virgin Islands shall have jurisdiction to issue any restraining order or temporary or permanent injunction in any case involving or growing out of a labor dispute, to prohibit any person or persons

fusing to work or advising or notifying any person of such an intention—the very activities which the union threatened to engage in if plaintiff's services were not terminated.

■ Our little Norris-LaGuardia Act is, it seems quite clear, an expression of public labor policy against the general allowance of such remedies in labor disputes by courts of the Virgin Islands. As part of our territorial labor policy, this statute must, as it has in this opinion, be accorded primary consideration in any suit praying for injunctive relief. Whether or not this court agrees with such a policy declaration is of no moment here. What is important is that by immobilizing the territorial judiciary, the act attempted to remove courts from this policy stage, leaving the controversial task of formulating labor policy to a more appropriate political institution—the Legislature of the Virgin Islands. See, Comment, Labor Injunctions, supra, p. 75; see also, Marine Cooks v. Panama S.S. Co., 362 U.S. 365, 370, n. 7 (1960).

■ It is perhaps clear by now that the anti-injunction statute is an insuperable obstacle to plaintiff's prayer for such relief. For not only is the injunctive remedy unavailable in peaceful, non-violent labor disputes such as this, but, we repeat, the specific activity which led to the discharge of plaintiff, advising or notifying the Virgin Isles Hilton of an intention to cease or refuse to work on behalf of the union and its membership, § 342(h)(a), is specifically immunized against injunctive relief. Accordingly, the court concludes as a matter of law that it is without power to grant either a permanent injunction or its lesser forms of restraint.

■ We have already indicated that based on the facts found by this court and the application thereto of the controlling principles of law, defendant will have to respond

participating or interested in such dispute from, whether singly or in concert, advising or notifying any person of an intention to cease or refuse to perform any work or to remain in any relation of employment.

in damages for its tortious conduct in maintaining a closed union and a closed shop. Neither admitting plaintiff to membership nor allowing him, without such membership, to pursue gainful employment is not a legitimate objective of concerted union activities in this jurisdiction.

Although raised by the court on its own motion, neither party has briefed, or argued or raised the question of the applicability of 24 V.I.C. Anno. §§ 125–136 (1964), providing for the protection of resident workers. We therefore intimate no view on its applicability to the facts of this case.

Let order issue in accordance with this opinion.